837 F.2d 380
 10 Fed.R.Serv.3d 365, 9 Employee Benefits Ca 1377
 Thomas J. YESETA, Plaintiff-Counter-Defendant-Appellee,
v.
Anthony S. BAIMA, Michael Baima, A. Baima, Inc., Rodney C.
Miles, individually and as Executor under the Will of
Anthony P. Baima, Deceased, and Andrew Hanley,
Defendants-Counter-Plaintiffs-Appellants.
 No. 86-6686.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 7, 1987.
Decided Jan. 15, 1988.
 
 Charles E. Weber, Gianni R. Driller, Keller, Weber & Dobrott, Irvine, Cal., for defendants-counter-plaintiffs-appellants.
 Arthur E. Schwimmer, and Patricia S. Brady, Los Angeles, Cal., for plaintiff-counter-defendant-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before ANDERSON, FERGUSON and NOONAN, Circuit Judges.
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 A. Baima, Inc. ("Baima Inc.") and the additional defendants appeal a judgment for Thomas J. Yeseta ("Yeseta") for $34,099.67 on the main claim and a $22,750 attorneys' fees award. Yeseta's suit was based upon the Employee Retirement Income Security Act, 29 U.S.C. Secs. 1001, et seq. ("ERISA"). The defendants counterclaimed based on ERISA also. The district court entered a judgment for Yeseta, offset by the counterclaim. The result was a net judgment for Yeseta. We affirm in part and reverse in part.
 
 FACTS AND PROCEEDINGS BELOW
 
 2
 Baima Inc., a roofing company, was jointly owned and operated by Anthony Baima and his three sons, Steve (aka Anthony S.), Michael, and Joel Baima. In 1973, Yeseta was hired and delegated the necessary authority to help manage the business and run the front office. This authority included making payments to and from income and expense accounts, as well as maintaining the company's records.
 
 
 3
 Baima Inc. maintained a profit sharing plan and trust, the A. Baima, Inc. Profit Sharing Plan and Trust ("Plan"), for the benefit of its employees. The Plan was administered by Baima Inc., with Anthony and Steve serving as named fiduciaries. Employees participated in the Plan with the expectation they would become vested participants eligible to receive their accrued benefits.
 
 
 4
 In November, 1979, Joel Baima requested Yeseta to withdraw $14,200 from the Plan and pay it over to Joel for his personal use. Yeseta complied with the request, which was purportedly a loan from the Plan evidenced by a promissory note. At the time of the withdrawal, Joel's Plan account balance was $7,737.83. Sometime later, Joel was killed and the loan was never repaid to the Plan. However, Joel's $7,737.83 account balance was paid over to his estate.
 
 
 5
 On two other occasions, to help cover operating expenses by Baima Inc. when its accounts were depleted, Yeseta made withdrawals from the Plan totalling $25,000. These withdrawals were not paid back to the Plan. Additionally, Steve Baima made a $20,000 transfer of funds out of the Plan and into the Baima Inc. expense accounts. This transfer was to help cover operating expenses, and while it was supposedly paid back to the Plan, this point was disputed.
 
 
 6
 In May of 1980, Anthony Baima died and attorney Rodney Miles was appointed executor of his estate. In June, Yeseta terminated his employment with Baima Inc. and made a demand for his vested interest in the Plan, to which demand there was no response. Later, Steve Baima made $9,200 in additional withdrawals from the Plan, supposedly for personal use. By February, 1981, Baima Inc. had ceased operations, although prior to this time it had remained solvent.
 
 
 7
 Yeseta and three other former employees filed suit for their accrued Plan benefits. The other employees were dismissed from the suit and Yeseta pursued his individual claim. He named as defendants Steve and Michael Baima, Baima Inc., the estate of Anthony Baima, and Rodney Miles, its attorney-executor, and Andrew Hanley, the accountant for Baima Inc. The Plan itself was not named as a party. The defendants asserted a counterclaim against Yeseta for the withdrawals he made from the Plan as being beyond the scope of his authorization.
 
 
 8
 The district court made findings of fact and conclusions of law and entered judgment against Yeseta on the counterclaim. It then ordered an accounting to determine the amount Yeseta was owed for his accrued benefits on the main claim. This accounting was disputed by the parties. The district court then made amended findings of fact and conclusions of law and entered an amended judgment in Yeseta's favor for $33,979.12 (plus $10,806.60 in interest) and against the defendants, jointly and severally, for Yeseta's vested interest in the Plan. This amount was offset by the counterclaim against Yeseta for $6,462.07 (plus $4,223.98 in interest) as a personal liability for the difference between the $14,200 loan which Yeseta made from the Plan to Joel Baima and Joel's $7,737.83 interest in the Plan. The result was a net judgment of $34,099.67 for Yeseta. Almost five months later, Yeseta was granted an additional judgment for $22,750 in attorneys' fees. The named defendants appeal, raising numerous contentions.
 
 DISCUSSION
 
 9
 The defendants first contend that the Plan was an indispensable party. As part of this contention, Michael Baima, Rodney Miles and Andrew Hanley argue they were not fiduciaries who could be held personally liable for the Plan's losses. A second contention is Yeseta's status as a fiduciary and the extent of his liability for the $25,000, as well as the $14,200 withdrawal he made from the Plan. Also, the defendants contend the district court erred in finding Baima Inc. was solvent at the time of the Plan withdrawals and that Yeseta was a vested participant in the Plan. Finally, the defendants argue a master should have been appointed to review the Plan and that the award of attorneys' fees was improper.
 
 1. Indispensable Party
 
 10
 Yeseta should have listed the Plan as a defendant in the caption of the amended complaint as required by Fed.R.Civ.P. 10(a). However, his failure to do so does not mean the action could not be maintained against the Plan. The body of the amended complaint refers repeatedly to the Plan, identifies Baima Inc. as its administrator, and explicitly refers to Rodney Miles and Michael Baima as trustee of the Plan. These parties were all joined and served. Moreover, for reasons unknown, the Plan did appear in the judgment as an individual entity against which judgment was entered.
 
 
 11
 Since the Plan was sufficiently identified in the body of the complaint, the action was properly maintained. See Rice v. Hamilton Air Force Base Commissary, 720 F.2d 1082, 1085 (9th Cir.1983) ("a party may be properly in a case if the allegations in the body of the complaint make it plain that the party is intended as a defendant.") (citing Hoffman v. Halden, 268 F.2d 280, 303-304 (9th Cir.1959). See also Greenwood v. Ross, 778 F.2d 448, 451-52 (8th Cir.1985) (failure to list a defendant in the caption does not mean the action cannot be maintained against him where he is identified in the body of the complaint).
 
 
 12
 Even if we were to assume the Plan was not identified in the body of the complaint, this is no impediment to Yeseta for failing to join the Plan. The Plan was administered by Baima Inc. which was named in the complaint. Also, Baima Inc. was owned by Steve, Michael and Anthony Baima, each of whom was named in the complaint, and both the Plan's named trustees, Steve and Anthony Baima, were named in the complaint. In short, anyone with legal responsibility to meet any Plan liability towards Yeseta was named in the caption on the complaint and properly served. See Dockray v. Phelps Dodge Corp., 801 F.2d 1149, 1151-52 n. 2 (9th Cir.1986). As a result, the action against the Plan was correctly maintained.[1]
 
 2. Proper Defendants
 
 13
 Individually, defendants Michael Baima, Rodney Miles, and Andrew Hanley each argue they are not fiduciaries of the Plan who could have been held personally liable.
 
 
 14
 In enacting ERISA, Congress set out to protect participants in employee benefit plans by establishing standards of conduct, responsibility, and obligations for fiduciaries of employee benefit plans, and by providing for appropriate remedies. See Pilot Life Insurance Co. v. Dedeaux, --- U.S. ----, ----, 107 S.Ct. 1549, 1550, 95 L.Ed.2d 39, 45-46 (1987). As part of this objective, two sections of ERISA designate who a fiduciary is. Section 1002(21) provides:
 
 
 15
 (A) Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.
 
 
 16
 (B) If any money or other property of an employee benefit plan is invested in securities issued by an investment company registered under the Investment Company Act of 1940 [15 U.S.C.A. Sec. 80a-1 et seq.], such investment shall not by itself cause such investment company or such investment company's investment adviser or principal underwriter to be deemed to be a fiduciary or a party in interest as those terms are defined in this subchapter, except insofar as such investment company or its investment adviser or principal underwriter acts in connection with an employee benefit plan covering employees of the investment company, the investment adviser, or its principal underwriter. Nothing contained in this subparagraph shall limit the duties imposed on such investment company, investment adviser, or principal underwriter by any other law.
 
 
 17
 ERISA also contains a collateral definition of a "named" fiduciary.
 
 
 18
 (1) Every employee benefit plan shall be established and maintained pursuant to a written instrument. Such instrument shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan.
 
 
 19
 (2) For purposes of this subchapter, the term "named fiduciary" means a fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly.
 
 
 20
 29 U.S.C. Sec. 1102(a). (Emphasis added).
 
 
 21
 Once fiduciary status is established, personal liability for breach can attach:
 
 
 22
 (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the Plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.
 
 
 23
 29 U.S.C. Sec. 1109(a). See also Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 140, 105 S.Ct. 3085, 3089, 87 L.Ed.2d 96 (1985) (beneficiary is authorized to bring an action against a fiduciary who has violated section 1109(a)).
 
 
 24
 Whether a breach has occurred is determined by the "prudent man" rule established in section 1104(a)(1).
 
 
 25
 Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
 
 
 26
 (A) for the exclusive purpose of:
 
 
 27
 (i) providing benefits to participants and their beneficiaries; and
 
 
 28
 (ii) defraying reasonable expenses of administering the plan;
 
 
 29
 (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
 
 
 30
 (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
 
 
 31
 (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter III of this chapter.
 
 
 32
 In accordance with section 1102(a), the Plan designated Anthony and Steve Baima as "named" fiduciaries. For this reason, they were clearly fiduciaries under Sec. 1002(21)(A) and are subject to personal liability, Sec. 1109(a), for breach of fiduciary duties, Sec. 1104(a)(1). See 29 C.F.R. 2509.75-8(D-3); see also Central States Pension Fund v. Central Transport, 472 U.S. 559, 572-73, 105 S.Ct. 2833, 2841, 86 L.Ed.2d 447 (1984) (duty of trustee is to preserve trust assets and prohibit extensions of credit to a participating employer). Gelardi v. Pertec Computer Corp., 761 F.2d 1323, 1325 (9th Cir.1985) (per curiam) (finding of fiduciary requires control over a plan); Donovan v. Mazzola, 716 F.2d 1226, 1231-32 (9th Cir.1983) (prudent person test is the pro per legal standard applied to fiduciaries).
 
 
 33
 Michael Baima was an officer of Baima Inc. and as such exercised control over the assets of the Plan. While Michael argues he did not exercise control over the Plan, he did have "discretionary authority or discretionary responsibility in the administration" of the Plan. 29 U.S.C. Sec. 1002(21)(A). Michael was therefore properly found to be a fiduciary in which Sec. 1109 personal liability attached. See 29 C.F.R. 2509.75-8(D-4).
 
 
 34
 Rodney Miles acted as the attorney for Baima Inc. and, in this regard, reviewed the Plan and its compliance with the law. He also acted as executor of Anthony Baima's estate. While evidence at trial suggested Rodney Miles counseled others in making withdrawals from the Plan, we believe the district court erred in holding him liable as a fiduciary.
 
 
 35
 Department of Labor regulations provide an example of an attorney rendering legal and consulting advice to a plan. The regulations indicate that absent a showing of "control respecting the management of the plan," or the "plan's assets," investment advice for a fee, or "discretionary responsibility in the administration of the Plan," an attorney or accountant is not a fiduciary.[2] From the evidence presented, neither Miles' status as an attorney nor as executor showed he controlled the Plan in a manner other than by usual professional functions. While Sec. 1002(21) requires a "broad definition" of fiduciary, Credit Managers Association v. Kennesaw Life & Accident Insurance, 809 F.2d 617, 625 (9th Cir.1987), under the regulations we believe Miles was not a fiduciary. See 29 C.F.R. Sec. 2509.75-5. See also Smith v. Harrang, No. 86-3952, slip op. at 9 (9th Cir. Aug. 17, 1987) (suggesting an attorney must counsel the plan before he can be considered a fiduciary).
 
 
 36
 Since Miles did not exercise authority over the Plan, he was not a fiduciary. The district court therefore erred in imposing personal liability upon him.
 
 
 37
 Andrew Hanley was Baima Inc's accountant and a CPA. The district court made no finding on Hanley as a fiduciary. However, since he was named in the judgment, we assume the district court found Hanley to be a fiduciary with personal liability imposed.
 
 
 38
 By the same analysis applied to Rodney Miles, Hanley was not a fiduciary. His control over the Plan was purely ministerial. The regulation, 29 C.F.R. Sec. 2509.75-5, explicitly rejects ministerial functions as being within the scope of Sec. 1002(21)(A). Hanley reviewed the books, and prepared financial statements and tax returns for Baima Inc. [RT 2:64-65]. He acted in a similar capacity on behalf of the Plan. This limited authority does not confer, nor did Hanley actually exercise, "control respecting management" of the Plan. 29 U.S.C. Sec. 1002(21). See also 29 C.F.R. Sec. 2509.75-8(D-2).
 
 
 39
 As a result, Hanley was not a fiduciary of the Plan. The finding of personal liability for his actions was therefore erroneous. The district court erred in naming Hanley in the judgment.
 
 3. Yeseta's Liability as a Fiduciary
 
 40
 The district court found that Yeseta withdrew $14,200 from the Plan and gave it to Joel Baima in the form of a loan, which was never paid back. Joel executed a promissory note for this amount payable to Yeseta. On this basis, the district court found Yeseta liable to the Plan for the difference between the $14,200 withdrawal which Yeseta made and Joel Baima's $7,737.83 interest in the Plan as a contributing employee. The defendants argue that Yeseta is a fiduciary because of his exercise of control over the fund and therefore is liable for the additional $25,000 in withdrawals which he made on behalf of Baima Inc. for operating funds which were never paid back into the fund.
 
 
 41
 The facts on Yeseta's authority were disputed. Yeseta claims he was given general authority by Anthony and Steve Baima to sign their names to corporate checks and manage the business. [RT-13]. Yeseta claims that, in this regard, he withdrew $25,000 from the Plan and placed the funds into the business's account in order to pay the necessary operating expenses. [RT 2:7,20]. Defendants claim they never gave Yeseta the instruction to carry out this withdrawal and that he was without authority to do so.
 
 
 42
 Under Sec. 1002(21), a fiduciary includes a person who "exercises any authority or control respecting management or disposition of [a plan's] assets." Whether Yeseta was authorized to make the $14,200 and the $25,000 withdrawals or not, he did exercise control over and disposed of Plan assets. His acts in this respect were not ministerial. On this basis, Yeseta is a fiduciary under Sec. 1002(21) whether or not he individually, or the business as an entity, incurred a benefit from the withdrawal.
 
 
 43
 Our finding is consistent with the district court's judgment on the counterclaim finding Yeseta liable for the $14,200 withdrawal (less the $7,737.83 of Joel Baima's vested interest in the Plan). By the same reasoning, Yeseta is liable for the $25,000 withdrawal on behalf of the corporation. This withdrawal amounted to a breach of Yeseta's fiduciary duty under Sec. 1104(a)(1).
 
 
 44
 Because of Yeseta's breach, he is liable for the $14,200 withdrawal. In this, since Joel's vested interest was paid to his estate, Yeseta is liable for the whole $14,200 without it being offset by $7,737.83. Therefore, the district court erred in not reducing Yeseta's judgment by $14,200 plus the additional amount of $25,000.
 
 4. Baima Inc.'s Solvency
 
 45
 A district court's findings of fact are reviewed under the clearly erroneous standard. F.R.Civ.P. 52(a); LaDuke v. Nelson, 762 F.2d 1318, 1321 (9th Cir.1985).
 
 
 46
 Under the clearly erroneous standard of review, an appellate court must accept the lower court's findings of fact unless upon review the appellate court is left with the definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); Dollar Rent a Car of Washington, Inc. v. Travelers Indemnity Co., 774 F.2d 1371, 1374 (9th Cir.1985); Johnson v. United States Postal Service, 756 F.2d 1461, 1464 (9th Cir.1985).
 
 
 47
 Defendants claim the district court's Finding of Fact # 17 is erroneous. That finding states: "At the time of all of the above-referenced transfers, the Corporation was in a solvent financial condition."
 
 
 48
 At trial, Rodney Miles testified that in acting as executor of Anthony Baima's estate, he valued the stocks in Baima Inc. at zero. Mr. Miles also opined that the company was valueless. [RT 2:45-46]. Andrew Hanley, the company's accountant, testified that in March of 1980 he believed Baima Inc. was insolvent. [RT 2:566].
 
 
 49
 However, the district court's finding was supported by other evidence. At the time Yeseta made the withdrawals in 1980, Baima Inc. did have outstanding accounts receivable. Prior to this time, the company was performing roofing services. The company also had physical assets at its disposal.
 
 
 50
 While the company's cash flow may have been low [RT 1:19-20], the district court's finding is supported by some evidence. Baima, Inc. was solvent at the time Yeseta made the withdrawals from the Plan. The district court did not err in finding that Baima Inc. was solvent.
 
 5. Yeseta's Benefits in the Plan
 
 51
 Yeseta testified that he was an employee of Baima Inc. for seven years and in that capacity was eligible to participate in the Plan. The amount Yeseta was entitled to receive from the Plan was contested.
 
 
 52
 Under the Plan, Yeseta's right to benefits was vested. He was more than 25 years old, was a classified employee and had completed three years of service as required by the Plan. See Profit Sharing Plan and Trust Adoption Agreement (Ex. 1; 2). He was also a Plan participant. Therefore, he was eligible to receive his vested interest in the Plan.
 
 
 53
 The defendants argue Yeseta's vested interest was not $33,979.12 plus $10,806.60 in interest as the trial court found. The district court ordered an accounting to determine this amount. While the accounting was contested, Rodney Miles' data suggested Yeseta's balance to be $33,979.12 after considering the amount held and interest paid on it. This is the amount the district court found to be most credible. It is supported by the documents Yeseta included in the record and we will not alter that finding.
 
 6. Attorneys' Fees
 
 54
 The district court awarded $22,750 to Yeseta in attorneys' fees. Under 29 U.S.C. Sec. 1132(g)(1)[3] a district court may, in its discretion, award reasonable attorneys' fees. Cf. McConnell v. Meba Medical & Benefits Plan, 778 F.2d 521, 525 (9th Cir.1985).
 
 
 55
 Because of our reversal with respect to Yeseta, finding him liable as a fiduciary for breach of duty in making the additional $25,000 withdrawal for the benefit of Baima Inc., we remand the attorneys' fees determination to the district court. We suggest the court entertain a Rule 60(b) motion and consider vacating the award for attorneys' fees in light of Yeseta's increased liability.
 
 7. Appointment of a Master
 
 56
 Finally, the defendants argue the district court should have appointed a master under Rule 53 instead of ordering an accounting to determine the extent of Yeseta's interest as a participant in the Plan.
 
 
 57
 While the evidence on the extent of Yeseta's interest in the Plan was contradictory, the district court did not err in failing to appoint a master to determine that interest. Reference to a master is the "exception and not the rule." Fed.R.Civ.P. 53(b). Appointment of a master is reserved for extremely complex cases. The determination of Yeseta's interest in the Plan was not so complex that it could not be determined by an accounting. Moreover, the district court reviewed the accounting and heard testimony on the Plan.
 
 
 58
 The accounting was clearly sufficient to appraise the court of Yeseta's interest. There was no err in failing to appoint a master.
 
 CONCLUSION
 
 59
 In light of the foregoing, the district court judgment is affirmed with respect to the sufficiency of the complaint in not joining the Plan as a party, reversed insofar as it establishes personal liability to Rodney Miles and Andrew Hanley, reversed to the extent Yeseta is also liable for the withdrawals of $14,200 and $25,000 he made from the Plan, affirmed in finding Baima Inc. was solvent at the time of the transfers, affirmed as to the finding of Yeseta's vested interest in the Plan, remanded for reconsideration on the award of attorneys' fees, and affirmed in not finding it necessary to appoint a master to determine Yeseta's interest in the Plan.
 
 
 60
 The judgment, therefore, is AFFIRMED IN PART, REVERSED IN PART, and REMANDED.
 
 
 61
 All parties shall bear their own costs.
 
 
 62
 FERGUSON, Circuit Judge, concurring in part and dissenting in part.
 
 
 63
 I concur in the opinion with the exception of that part which discusses whether or not the Plan was an indispensable party. I dissent from that part.
 
 
 64
 The majority rejects the defendants' argument that the Plan was an indispensable party. They base this decision on the grounds that the Plan was de facto a party since it (1) was clearly identified in the body of the complaint, (2) the administrator and trustees of the Plan were named as individuals and served as parties, and (3) a judgment was entered against the Plan.
 
 
 65
 The majority is in error.
 
 
 66
 The Plan of course is identified with precision in the body of the complaint because it is the focal point of the dispute. Nowhere in the complaint, however, is it even hinted that the Plan is a party which must appear and defend itself. This is not true in any of the cases cited by the majority.
 
 
 67
 In Rice v. Hamilton Air Force Base Commissary, 720 F.2d 1082 (9th Cir.1983), the caption of the complaint mistakenly named "Hamilton Air Force Base Commissary" as defendant whereas the proper party should have been the Secretary of the Navy. This court held that the Secretary was sufficiently identified in papers filed in court. We held "a party may be properly in a case if the allegations in the body of the complaint make it plain that the party is intended as a defendant." Id. at 1085 (emphasis added). Hoffman v. Halden, 268 F.2d 280 (9th Cir.1959), and Greenwood v. Ross, 778 F.2d 448 (8th Cir.1985), are similar. In Hoffman, the defendant's accountants, although not named in the caption, were clearly set forth in the body of the complaint as defendants from whom relief was sought. Greenwood is the same. The law in Rice, Hoffman and Greenwood thus cannot be applied to the instant case because nowhere in Yeseta's amended complaint is it even hinted that the Plan itself was "intended as a defendant." The majority's error in relying on these cases is due to its failure to understand that merely discussing the Plan in the body of the complaint is not equivalent to designating the Plan--implicitly or explicitly--as defendant.
 
 
 68
 The majority next asserts that the Plan is in the litigation because the administrator and the trustees were named as parties. However, these parties were named as defendants in their individual capacities, and not as representatives of the Plan.
 
 
 69
 Moreover, even if they were sued in their representative capacities, they would not represent the Plan because of conflicts of interest. This case involves the plunder of a profit sharing plan by the officers, directors and management of a corporation, the employees of which were the beneficiaries of the Plan. The majority contends that the plunderers can in this court represent the victim of the crime. I trust that a citation to the fallacy of that rule would be superfluous.[1]
 
 
 70
 Lastly, the majority states that the Plan was in the litigation because "moreover, for reasons unknown, the Plan did appear in the judgment as an individual entity against which judgment was entered." The unknown reason can only be that the district court implicitly recognized that the Plan was a necessary party. Accord, Carter v. Montgomery Ward & Co., 76 F.R.D. 565, 566 (1976) (In ERISA action court noted that pension plan was a statutorily recognized legal entity and found it a "necessary part[y] to any effective relief" for employee seeking to recover benefits under plan). Instead of joinder, however, the Plan received a judgment against it even though it was (1) never named as a defendant in the caption of the complaint, (2) never identified as a defendant anywhere before the judgment, (3) was never served as a defendant, and (4) never had its default entered. One must wonder about such justice.
 
 
 71
 There is no one to protect the interests of the Plan except the judges of this court.[2] Instead of protecting the Plan the majority gives its approval to the obvious injustice--the victim of the plunder has a judgment against it for the benefit of the culprits. It just doesn't make sense that this court could condone such a result.
 
 
 72
 I dissent.
 
 
 
 [1]
 The dissent contends the Plan should have been independently represented as a necessary party in order to protect the Plan's interests. First, independent representation is unnecessary because the interests of the Plan and the interests of the defendants are the same with respect to Yeseta. Second, the defendants did protect the interests of the Plan. This is clear from the counterclaim against Yeseta for breach of his fiduciary duty [ER:50 at 612; ER:102 at 2] in which we found Yeseta liable in making both the $14,200 and $25,000 withdrawals from the Plan
 
 
 [2]
 29 C.F.R. Sec. 2509.75-5 (1986) provides in relevant part:
 D-1 Q: Is an attorney, accountant, actuary or consultant who renders legal accounting, actuarial or consulting services to an employee benefit plan (other than an investment adviser to the plan) a fiduciary to the plan solely by virtue of the rendering of such services, absent a showing that such consultant (a) exercises discretionary authority or discretionary control respecting the management of the plan, (b) exercises authority or control respecting management or disposition of the plan's assets, (c) renders investment advice for a fee, direct or indirect, with respect to the assets of the plan, or has any authority or responsibility to do so, or (d) has any discretionary authority or discretionary responsibility in the administration of the plan?
 A. No. However, while attorneys, accountants, actuaries and consultants performing their usual professional functions will ordinarily not be considered fiduciaries, if the factual situation in a particular case falls within one of the categories described in clauses (a) through (d) of this question, such persons would be considered to be fiduciaries within the meaning of section 3(21) of the Act.
 
 
 [3]
 29 U.S.C. Sec. 1132(g)(1) provides:
 "In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."
 
 
 [1]
 Nor does Dockray v. Phelps Dodge Corp., 801 F.2d 1149 (9th Cir.1986) support the majority's opinion. I am at a loss to understand why the majority believes that Dockray grants the plunderers of a pension plan the right or duty to represent the Plan which is the victim of the plunder. In Dockray, when it was determined that a named defendant was never served, the district court deleted the unserved party from a judgment against it. Furthermore, although the Dodge Corporation's Plan was named as a defendant, it was never served and no judgment was entered against the Plan. Nothing in Dockray refutes the basic notion that a party must be joined if there is to be a judgment against it
 
 
 [2]
 The majority is mistaken when it claims that the defendants protected the interests of the Plan. There is not one shred of evidence in the record that they did anything. More importantly, not even the majority can explain or understand how the Plan, which was victimized by the defendants as well as Yeseta, ended up with a judgment against it