201 F.3d 1212 (9th Cir. 2000)
 ANTHONY RUTLEDGE, an individual on his own behalf and beneficiaries of the Hotel Union and Hotel Industry of Hawaii Pension Trust; AFL HOTEL AND RESTAURANT WORKERS' HEALTH AND WELFARE FUND,Plaintiffs-Appellees, ORDER AND AMENDED
v.
SEYFARTH, SHAW, FAIRWEATHER & GERALDSON, a California Law Partnership; MITCHELL WHITEHEAD, an individual, OPINION Defendants-Appellants.
 No. 98-15298
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted March 9, 1999
Filed January 12, 2000
Amended April 5, 2000
 
 Appeal from the United States District Courtfor the Northern District of California
 COUNSEL: Brian T. Ashe, Seyfarth, Shaw, Fairweather & Geraldson, San Francisco, California; George E. Preonas and Steven B. Katz, Seyfarth, Shaw, Fairweather & Geraldson, Los Angeles, California, for the defendants-appellants.
 Samuel Kornhauser, Law Offices of Samuel Kornhauser, San Francisco, California, for the plaintiffs-appellees.
 Before: Diarmuid F. O'Scannlain and Kim McLane Wardlaw, Circuit Judges, and Wm. Matthew Byrne, Jr.,[1] District Judge.
 OPINION
 WARDLAW, Circuit Judge:
 
 
 1
 Seyfarth, Shaw, Fairweather & Geraldson, a law firm, and Mitchell Whitehead, one of its attorneys (collectively, "Seyfarth"), appeal from the district court's order awarding attorneys' fees and costs under 28 U.S.C. S 1447(c) to Anthony Rutledge and the AFL Hotel and Restaurant Workers' Health and Welfare Fund (collectively, "Rutledge"). The court made the award on the strength of its prior decision remanding the underlying action to state court for lack of federal subjectmatter jurisdiction, despite Seyfarth's claim of preemption under the Employee Retirement Income Security Act of 1974, 29 U.S.C. S 1001 et seq. ("ERISA"). Seyfarth's appeal presents the question whether the district court abused its discretion in awarding the fees and costs. We conclude that removal was proper, and, accordingly, we reverse.
 
 
 2
 * The Hotel Union and Hotel Industry of Hawaii Pension Trust and the AFL Hotel and Restaurant Workers' Health and Welfare Fund (collectively, the "Plans") are two multiemployer employee benefit plans. The Plans are governed by ERISA. Rutledge is a labor trustee for and participant in the Plans. Seyfarth has provided legal services to the Plans since 1984.
 
 
 3
 Rutledge brought suit in the Superior Court of California on behalf of himself and all other participants and beneficiaries of the Plans. Rutledge claimed that Seyfarth overcharged the Plans for legal services rendered between 1986 and 1998 by charging them for Whitehead's time at his then-current hourly rate, which exceeded an allegedly agreed-upon rate of $155 per hour.[2] Rutledge raised various state law claims: breach of contract, breach of the covenant of good faith, breach of fiduciary duty, fraud, constructive fraud, and negligent misrepresentation. He prayed for relief in the form of damages according to proof, punitive damages, costs and attorneys' fees, and other relief as deemed appropriate by the court. The complaint did not expressly allege any causes of action under ERISA.
 
 
 4
 Seyfarth removed the complaint to the United States District Court for the Northern District of California on October 3, 1997, pursuant to 28 U.S.C. S 1441. Seyfarth sought to invoke the district court's federal question jurisdiction under 28 U.S.C. S 1331, on the grounds that ERISA preempted the state law claims such that there was federal jurisdiction despite the absence of any federal cause of action on the face of the complaint. Seyfarth then moved for judgment on the pleadings. Rutledge contested the removal and moved to remand.
 
 
 5
 On December 19, 1997, the district court conducted a hearing on the motion to remand. Relying on our decision in Yeseta v. Baima, 837 F.2d 380 (9th Cir. 1988), the district court stated that, "[i]t seems plain that the services to be performed by the Seyfarth firm . . . were traditional attorney services, and thus these professional functions will not support a determination that ERISA applies to their performance. And, accordingly, the basis for removal under ERISA is absent." Implicitly, the court concluded that the only basis for preemption would be a claim against Seyfarth in its fiduciary capacity and that Yeseta precluded it from finding that a fiduciary relationship existed. Because the district court determined that ERISA did not preempt Rutledge's state law claims and therefore did not confer federal subject-matter jurisdiction over the action, the court granted Rutledge's motion to remand and dismissed Seyfarth's motion for judgment on the pleadings as moot.
 
 
 6
 After issuing its remand order, the district court ruled that Rutledge was entitled to attorneys' fees and costs, pursuant to 28 U.S.C. S 1447(c),[3] under the rule of Moore v. Permanente Medical Group, Inc., 981 F.2d 443, 445 (9th Cir. 1992), that a district court retains jurisdiction to award costs and fees pursuant to 28 U.S.C. S 1447(c) even after issuing a remand order. The court ordered briefing as to the proper amount of attorneys' fees and costs, and on January 26, 1998, entered an order awarding $23,052.22, the full amount requested by Rutledge.[4]
 
 
 7
 Seyfarth timely appealed, invoking our jurisdiction under 28 U.S.C. S 1291.
 
 II
 
 8
 On appeal, Seyfarth challenges the award of attorneys' fees, in part on the ground that the action should not have been ordered remanded.
 
 
 9
 * Although the district court's remand order is not reviewable in this Court, see 28 U.S.C. S 1447(d), we do review the district court's award of attorneys' fees for abuse of discretion, see K.V. Mart Co. v. United Food and Commercial Workers Int'l Union, Local 324, 173 F.3d 1221, 1223 (9th Cir.) (citing Moore, 981 F.2d at 447), cert. denied, 120 S.Ct. 176 (1999), and one component of this review is "some consideration of the underlying remand order," Moore, 981 F.2d at 447. Although the district court has "wide discretion " in assessing fees under S 1447(c), id., we must reverse an award of attorneys' fees if the district court's exercise of discretion was grounded in a determination of law that we reject. See id. (citing Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990)). We review the district court's legal determination as to the propriety of removal, like all questions of subjectmatter jurisdiction, de novo. See Toumajian v. Frailey, 135 F.3d 648, 652 (9th Cir. 1998) (citing Kruse v. State of Hawaii, 68 F.3d 331, 333 (9th Cir. 1995)).
 
 
 10
 With these principles in hand, we turn to the question of whether Seyfarth properly removed the action to federal court.
 
 B
 
 11
 Rutledge's complaint did not allege a federal cause of action on its face. Seyfarth therefore could have established federal subject-matter jurisdiction supporting removal if, but only if, ERISA "completely preempts" the state law claims. See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987); Toumajian v. Frailey, 135 F.3d 648, 653-54 (9th Cir. 1998).
 
 
 12
 "Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." Metropolitan Life Ins. Co., 481 U.S. at 63. However, "[a]n independent corollary to the wellpleaded complaint rule is the `complete preemption' doctrine." Id. at 1358; see Harris v. Provident Life and Accident Ins. Co., 26 F.3d 930, 934 (9th Cir. 1994)."That is, `[o]n occasion, . . . the pre-emptive force of a statute is so `extraordinary' that it `converts an ordinary state common-law complaint into one stating a federalclaim for purposes of the wellpleaded complaint rule.' " Harris, 26 F.3d at 934 (quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987)).
 
 
 13
 ERISA completely preempts a claim under state law, permitting the defendant to remove despite the well-pleaded complaint rule, if two circumstances exist: "(1) ERISA preempts the plaintiff's cause of action and (2) the cause of action falls within the scope of [ERISA's civil enforcement provision,] 29 U.S.C. S 1132(a)." Emard v. Hughes Aircraft Co., 153 F.3d 949, 953 (9th Cir. 1998), cert. denied, _____ U.S. _____, 119 S.Ct. 903, 142 L.Ed.2d 902(1999); see Buster v. Greisen, 104 F.3d 1186, 1188 (9th Cir. 1997) (Complete preemption occurs only when ERISA both "preempts" the state claim and "displaces the claim with its civil enforcement provision."), cert. denied, 522 U.S. 981 (1999).
 
 
 14
 i.
 
 
 15
 Developing a rule to identify whether ERISA preempts a given state law -the first step in determining whether ERISA completely preempts the law -has bedeviled the Supreme Court. See California Div. of Labor Standards v. Dillingham, 519 U.S. 316, 355 (1997) [hereinafter "Dillingham"] (Scalia, J., concurring) ("Since ERISA was enacted in 1974, this Court has accepted certiorari in, and decided, no less than 14 cases to resolve conflicts in the Courts of Appeals regarding ERISA pre-emption of various sorts of state law. The rate of acceptance, moreover, has not diminished. . . ." (footnote omitted)). The starting point has been the statute itself, which provides that ERISA preempts a state law claim if the claim "relates to" an employee benefit plan. 29 U.S.C. S 1144(a). The Court has regularly emphasized the broad effect of this statute. See Dillingham, 519 U.S. at 324 (quoting prior cases using the phrases "clearly expansive, " "broad scope," "expansive sweep," "broadly worded," "deliberately expansive," and "conspicuous for its breadth"). "In more recent decisions, however, the Supreme Court has limited the scope of the `relate to' provision of ERISA." Bast v. Prudential Ins. Co. of Am., 150 F.3d 1003, 1007 (9th Cir. 1998), cert. denied, 119 S.Ct. 903 (1999).
 
 
 16
 The Court has stated that "[a ] law `relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983)) (emphasis added). Additionally, the Court has given a fairly precise and narrow definition -not applicable to the case before us -to the phrase "reference to. " See Dillingham, 519 U.S. at 325 ("Where a State's law acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation . . . that `reference' will result in pre-emption."). However, the Court has not provided such defined content to the phrase "connection with." "Rather, to determine whether a state law has the forbidden connection, we look both to `the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' as well as to the nature of the effect of the state law on ERISA plans." Dillingham, 519 U.S. at 325.
 
 
 17
 In analyzing these objectives, the Court has written that "[t]he basic thrust of the pre-emption clause[is] to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans. " New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 657 (1995) [hereinafter "Travelers"].[5] It has also emphasized more generally "[t]he principal object of the statute [ERISA] is to protect plan participants and beneficiaries." Boggs v. Boggs, 520 U.S. 833, 845 (1997). In contrast, the Court has established a presumption that Congress did not intend ERISA to preempt areas of "traditional state regulation" that are "quite remote from the areas with which ERISA is expressly concerned--`reporting, disclosure, fiduciary responsibility, and the like.' " Dillingham, 519 U.S. at 330 (quoting Travelers, 514 U.S. at 661 (quoting Shaw, 463 U.S. at 98)); see De Buono v. NYSA-ILA Med. & Clinical Servs. Fund, 520 U.S. 806, 814 (1997); Geweke Ford, 130 F.3d at 1358.[6]
 
 
 18
 In its most recent foray, the Court retreated from this explicit purposive analysis and simply concluded that ERISA preempts California's agency law because of its "marked effect on plan administration." Unum Life Ins. Co. of Am. v. Ward, 119 S.Ct. 1380, 1392 (1999).
 
 
 19
 ii.
 
 
 20
 Not surprisingly, our Circuit has not arrived upon a single, precise rule that universally determines whether ERISA preempts a state law. Since the Supreme Court decided Travelers, we have formulated several different, though compatible, tests in an effort to follow the Supreme Court in fulfilling the statutory mandate of broad preemption without intruding upon state laws beyond the intention of Congress and the objectives of ERISA.
 
 
 21
 In Arizona State Carpenters Pension Trust Fund v. Citibank, (Arizona), 125 F.3d 715, 722 (9th Cir. 1997) [hereinafter "Arizona State Carpenters"], we relied on and supplemented a "relationship test" previously developed in General Am. Life Ins. Co. v. Castonguay, 984 F.2d 1518, 1522 (9th Cir. 1993). Noting that "[t]here can be little doubt that Congress intended to sweep away any state law whose administration might interfere with or complicate the administration of ERISA" and that "the remedies Congress created were intended to be exclusive," Arizona State Carpenters, 125 F.3d at 722, we formulated a test emphasizing three traditional areas identified as preempted by the Supreme Court in Travelers: (1) "state laws that mandate . . . employee benefit structures or their administration"; (2) "state laws that bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself"; and (3)"state laws providing alternate enforcement mechanisms for employees to obtain ERISA plan benefits." Id. at 723 (quoting Coyne & Delany Co. v. Selman, 98 F.3d 1457 (4th Cir. 1996)) (citations and internal quotation marks omitted). We concluded that "where state law claims [1] fall outside [these] three areas of concern identified in Travelers, [2 ] arise from state laws of general application, [3] do not depend upon ERISA, and [4] do not affect the relationships between the principal ERISA participants[,] the state law claims are not preempted." Id. at 724.
 
 
 22
 A similar "relationship" approach can be seen in Geweke Ford, in which we reiterated Castonguay's statement that "[a] state law claim is preempted if it `encroaches on the relationships regulated by ERISA.' " Geweke Ford , 130 F.3d at 1358 (quoting Castonguay, 984 F.3d at 1522)."ERISA does not preempt regulation of those relationships `where a plan operates just like any other commercial entity #AD9A BD# for instance the relationship between the plan and its own employees, or the plan and its insurers or creditors.' Under Castonguay, the key issue is whether the parties' relationships are ERISA-governed relationships." Geweke Ford, 130 F.3d at 1358 (citation omitted) (emphasis added).[7]
 
 
 23
 In a subsequent case, Operating Eng'rs Health & Welfare Trust Fund v. JWJ Contracting Co., 135 F.3d 671 (1998) [hereinafter "Operating Eng'rs"], we made clear that the multi-pronged test in Arizona State Carpenters was not the exclusive guide for the Circuit. In Operating Eng'rs, we emphasized the continued applicability of the factors developed in another of our earlier cases, Aloha Airlines, Inc. v. Ahue, 12 F.3d 1498, 1504 (9th Cir. 1993). We wrote:
 
 
 24
 To aid in determining whether a state law is con nected with an ERISA benefit plan, this court has identified the following factors:
 
 
 25
 (1) whether the state law regulates the types of benefits of ERISA employee welfare benefit plans;
 
 
 26
 (2) whether the state law requires the establishment of a separate employee benefit plan to comply with the law;
 
 
 27
 (3) whether the state law imposes report ing, disclosure, funding, or vesting requirements for ERISA plans; and
 
 
 28
 (4) whether the state law regulates certain ERISA relationships, including the relationships between an ERISA plan and employer and, to the extent an employee benefit plan is involved, between the employer and employee. Operating Eng'rs, 135 F.3d at 678 (quoting Aloha Airlines, Inc. 12 F.3d at 1504 (9th Cir. 1993) (citations omitted and formatting added)). Recently, we have continued to apply these factors. See McBride v. PLM Int'l, Inc., 179 F.3d 737, 745 (9th Cir. 1999).)[8]
 
 
 29
 Elsewhere, we have placed the Aloha Airlines factors as one element of a greater, overarching test that focuses on the application of traditional non-ERISA-specific preemption principles:
 
 
 30
 Under this approach we ask first whether application of California law would conflict with ERISA. See Boggs v. Boggs, 520 U.S. 833, 117 S.Ct. 1754, 1760, 138 L.Ed.2d 45 (1997). This is itself a two-step anal ysis in which we ask (1) whether California law conflicts withany specific provision of ERISA and then (2) whether application of California law would frus trate Congress' purposes in enacting ERISA. Having proceeded through the conflict analysis, we ask next whether Congress has indicated an intent to occupy the field so completely that California law is neces sarily preempted. See id. 520 U.S. at , 117 S.Ct. at 1760; Dillingham, 117 S. Ct. at 843 (Scalia, J., concurring).
 
 
 31
 See Emard, 153 F.3d at 957. The Aloha Airlines factors, we wrote, were part of the process of determining whether a state law "would frustrate Congress' purposes." See id. at 958.[9]
 
 
 32
 Most recently, in Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Group, Inc., 187 F.3d 1045 (9th Cir. 1999), we again returned to the concept of "relationship " in Castonguay, but supplemented it in a manner different from our analysis in Arizona State Carpenters. We wrote:
 
 
 33
 [S]ubsequent to Travelers, De Buono, and Dilling ham Construction, we have continued to rely on a "relationship" test to determine the scope of ERISA's express preemption clause, a test formu lated in General Am. Life Ins. Co. v. Castonguay , 984 F.2d 1518, 1521-22 (9th Cir.1993). See, e.g. , Geweke Ford, 130 F.3d at 1358 . . . . Under this test, we look to whether the state law encroaches on rela tionships regulated by ERISA, such as between plan and plan member, plan and employer, and plan and trustee.
 
 
 34
 Id. at 1053. We analyzed the issue from the perspective of ERISA's purposes, concluding that the purposes of ERISA preemption, as explained by Travelers, did not apply because "[t]he state law . . . does not create an alternative enforcement mechanism for securing benefits under the terms of ERISAcovered plans" and "the economic effects that the . . . claims might have on the plans does not imply that the claims interfere with the field of benefits law that Congress sought to occupy with ERISA." Id. at 1054; cf. Washington Physicians Service Ass'n v. Gregoire, 147 F.3d 1039, 1043 (9th Cir. 1998) ("The Court has since elaborated that in determining whether a `connection' exists between a state law and an ERISA plan, courts must consider whether the law requires particular benefit structures or imposes administrative burdens on a plan." (citing Travelers)), cert. denied, 119 S. Ct. 1033 (1999).
 
 
 35
 We decline to develop our own test describing the outer bounds of ERISA preemption, or to determine in every particular how these varied formulations from recent cases fit together. The resolution of the case before us does not require it. Instead, we observe only that under each test, a core factor leading to the conclusion that a state law claim is preempted is that the claim bears on an ERISA-regulated relationship. See Blue Cross of Cal., 187 F.3d at 1053 ("[W]e look to whether the state law encroaches on relationships regulated by ERISA . . . ."); Emard, 153 F.3d at 957 (In determining whether state law would "frustrate the purposes " of the statute, a factor is the existence of state-law regulation of ERISA relationships.); Operating Eng'rs, 135 F.3d at 678 (A preemption factor is "whether the state law regulates certain ERISA relationships . . . ." (quoting Aloha Airlines, Inc. (internal quotation marks omitted)); Geweke Ford, 130 F.3d at 1358 ("A state law claim is preempted if it `encroaches on the relationships regulated by ERISA.' " (quoting Castonguay)); see also Arizona State Carpenters, 125 F.3d at 724 (holding that there is no preemption where, inter alia, the state laws "do not affect the relationships between the principal ERISA participants").
 
 
 36
 iii.
 
 
 37
 In deciding the motion to remand, the district court focused on one such ERISA-governed relationship: the relationship established by ERISA S 404, which imposes upon plan fiduciaries a duty to discharge their duties "solely in the interests of the participants and beneficiaries" and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use . . . ." 29 U.S.C.S 1104(a)(1)(B).
 
 
 38
 A person or entity is considered a fiduciary with respect to a plan to the extent that:
 
 
 39
 (i) he exercises any discretionary authority or discre tionary control respecting management of such plan or exercises any authority or control respecting man agement or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretion ary authority or discretionary responsibility in the administration of such plan.
 
 
 40
 29 U.S.C. S 1002(21)(A).
 
 
 41
 The district court determined that Seyfarth was not an ERISA fiduciary, relying on our decision in Yeseta, in which we fleshed out the contours of S 1002(21)(A) and held that "an attorney rendering legal and consulting advice to a plan" will not be deemed a fiduciary unless she exercises authority over the plan "in a manner other than by usual professional function" and, therefore, she is not susceptible to an ERISA lawsuit for breach of fiduciary duty. Yeseta, 837 F.2d at 385 (citing 29 C.F.R. S 2509.75-5 (1986)). We have since reaffirmed this rule, see Nieto v. Ecker, 845 F.2d 868, 871 (9th Cir. 1988), which also applies to professionals other than attorneys, see Yeseta, 837 F.2d at 385 (accountant); Arizona State Carpenters, 125 F.3d 715, 721-22 (9th Cir. 1997) (bank providing custodial and depository services); accord Painters of Philadelphia Dist. Council No. 21 Welfare Fund v. Price Waterhouse, 879 F.2d 1146, 1150 (3d Cir. 1989) (holding that an auditing firm that reviewed information provided by others who actually controlled assets was not a fiduciary); O'Toole v. Arlington Trust Co., 681 F.2d 94, 96 (1st Cir. 1982) (holding that a bank that acted merely as a depository for a trust fund and whose responsibility did not include "discretionary advisory activities" was not a fiduciary).
 
 
 42
 Under the weight of this authority, the district court held that because Seyfarth had performed traditional attorney services for the plans, Seyfarth was not a fiduciary under ERISA and was not subject to a cause of action under ERISA for breach of fiduciary duty. Therefore, the court ruled that ERISA preemption did not apply. The district court premised its remand order and subsequent award of attorneys' fees and costs on this ruling. We conclude that the district court accurately interpreted our cases with respect to relationships of fiduciary duty under ERISA S 404. Under our ERISA jurisprudence, however, we cannot rest on this conclusion but are compelled to consider whether another ERISA-governed relationship, independent of the ERISA-created fiduciary relationship, has preemptive force.
 
 
 43
 Our cases have recognized that ERISA creates a separate cause of action against non-fiduciaries who are "parties in interest"[10] and who engage in "prohibited transactions" under ERISA SS 406 and 408, 29 U.S.C. SS 1106(a), 1108(b).[11] See Nieto,845 F.2d at 873. In Nieto, we examined the scope of the ERISA civil remedies provision, ERISA S 502, which provides in part that "[a] civil action may be brought -by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . ." 29 U.S.C. S 1132(a)(3). We concluded that under this section a beneficiary or plan participant may bring suit for equitable relief against a non-fiduciary who is a party in interest to a plan if that party has engaged in transactions prohibited by ERISA SS 406(a) and 408(b). See Nieto, 845 F.2d at 873. We have since reaffirmed the existence of this basis for relief, see Landwehr v. DuPree, 72 F.3d 726, 733 (9th Cir. 1995), and other courts have held likewise, see, e.g., LeBlanc v. Cahill, 153 F.3d 134, 152-53 (4th Cir. 1998) (citing Nieto with approval and finding a cause of action under S 406 against non-fiduciaries for prohibited transactions); Herman v. South Carolina Nat'l Bank, 140 F.3d 1413, 1421 (11th Cir. 1998) (citing Nieto and holding that ERISA SS 406 and 502(a)(5) permit a cause of action by the Secretary of Labor against a party in interest involved in prohibited transactions), cert. denied, 119 S. Ct. 1030 (1999); cf. Lockheed Corp. v. Spink, 517 U.S. 882, 889 n.3 (1996) (explicitly not deciding whether a cause of action exists against a party in interest for prohibited transactions).
 
 
 44
 In Nieto, we established that parties in interest include attorneys who provide legal services to an ERISA plan. See Nieto, 845 F.2d at 873. We held that prohibited transactions in violation of ERISA SS 406(a)(1) and 408(b) include the receipt of excessive compensation for legal services rendered to an ERISA plan. See id.; 19 U.S.C. S 1108(b) (contract for legal services prohibited unless "no more than reasonable compensation is paid therefor"); Concha v. London, 62 F.3d 1493, 1504 (9th Cir. 1995), cert. dismissed, 517 U.S. 1183 (1996). This is the very allegation underlying Rutledge's state court complaint, for charges for legal services in excess of the contractually agreed-upon rate are "excessive compensation" and "more than reasonable" within the meaning of S 408(b).
 
 
 45
 In Concha v. London, we held that state-law claims against a non-fiduciary for prohibited transactions "relate to the administration of a plan covered by ERISA" and are preempted. Concha, 62 F.3d at 1504. The soundness of this holding can be seen when considered in the light of our purposive and relationship-focused approach to preemption. In its enumeration of prohibited transactions, ERISA precisely defines the relationship between plans and parties in interest. This reveals an "ERISA-governed relationship," Geweke Ford, 130 F.3d at 1358, with regard to the rates charged by lawyers to plans. By introducing the possibility of inconsistent substantive and procedural rules with regard to excessive fees, state law claims can be deemed to have a "marked effect on plan administration," Unum Life Ins. Co. of Am. , 119 S.Ct. 1380, 1392 (1999); by duplication, a state law cause of action concerning excessive fees contravenes the principle that "the remedies Congress created were intended to be exclusive," Arizona State Carpenters, 125 F.3d at 722. The prohibited transactions provision serves ERISA's purposes by protecting a plan's participants and beneficiaries from a depletion of plan assets through shady, inside deals and by providing a consistent rule of reasonableness governing fees for services across jurisdictions. See Boggs, 520 U.S. at 845 (stating that "[t]he principal object of the statute [ERISA] is to protect plan participants and beneficiaries"); Travelers , 514 U.S. at 657 (concluding that "[t]he basic thrust of the pre-emption clause [is] to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans"). The state law claim interferes with this carefully spelled-out relationship by providing an alternative route for beneficiaries and participants to rectify excessive fees. See id. at 658 ("[W]e have held that state laws providing alternative enforcement mechanisms also relate to ERISA plans, triggering pre-emption.").
 
 
 46
 Rutledge's claims bear upon the ERISA-governed relationship between Seyfarth and the Plans. The claims are addressed to Seyfarth's actions in exactly the capacity regulated by the statute. In contrast, in Blue Cross of Cal., in which we found no preemption despite the presence of a claim against a fiduciary, we wrote: "The . . . claims concern only promises that Blue Cross made as a health care plan provider to its participating physicians. They do not touch on Blue Cross' fiduciary status, or any claims that a beneficiary may make against Blue Cross in that capacity." Blue Cross of Cal., 187 F.3d at 1054. Similarly, in Arizona State Carpenters, we concluded that "[a]s a service provider offering nonfiduciary custodial services, Citibank's relationship with the Trust Funds was no different from that between Citibank and any of its customers," Arizona State Carpenters, 125 F.3d at 724, in the context of a suit for "breach of[a] custodial agreement through Citibank's failure to notify the Trustees of defaults on interest and principal payments on investments the investment manager made on behalf of the Trust Funds," id. at 719. If Citibank had been charging "more than reasonable" fees, it would have been liable as a party in interest under the reasoning of Nieto; however, the claim was for inadequate or improper performance and so failed to implicate the "prohibited transaction" provisions. See 29 U.S.C. 1108(b)(2) (requiring that parties in interest and fiduciaries "make reasonable arrangements for . . . services" and that "no more than reasonable compensation [be] paid").[12]
 
 
 47
 In evaluating the underlying remand order for the purpose of reviewing the district court's grant of attorneys' fees, we conclude that the allegation at issue in the state law claims -that Seyfarth charged legal fees to the Plans in excess of an amount agreed upon by the parties -is the sort of prohibited transaction governed by ERISA. Accordingly, the district court erred in finding that the claims were not preempted. See Concha, 62 F.3d at 1504.[13]
 
 
 48
 iv.
 
 
 49
 As discussed above, it is also clear that ERISA's civil enforcement provision provides a cause of action for claims of excessive compensation. See, e.g., Nieto, 845 F.2d at 873. Therefore, because the state law claims are both "preempt[ed]" and "displace[d]," the state law claims are completely preempted, allowing removal despite the well-pleaded complaint rule. See Emard, 153 F.3d at 953.
 
 III
 
 50
 Having waded into the "veritable Sargasso Sea of obfuscation" that is ERISA preemption law, Toumajian , 135 F.3d at 654 n.3 (quoting Travelers Ins. Co. v. Cuomo, 14 F.3d 708, 717 (2d Cir. 1993), rev'd sub nom. New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645 (1995)), we reject the legal determination on which the district court based its award of fees. Applying abuse-of-discretion review, we must therefore reverse the district court's award. See Moore, 981 F.2d at 447; accord Suder v. Blue Circle, Inc., 116 F.3d 1351, 1352 (10th Cir. 1997) (holding that a fee award is appropriate only where "removal was improper ab initio"); Miranti v. Lee, 3 F.3d 925, 928 (5th Cir. 1993) (holding that "the propriety of the defendant's removal continues to be central in determining whether to impose fees").
 
 
 51
 For the foregoing reasons, we reverse the judgment of the district court.[14]
 
 
 52
 REVERSED.
 
 
 
 Notes:
 
 
 [1]
 The Honorable Wm. Matthew Byrne, Jr., Senior United States District
 
 
 [2]
 Rutledge maintains that the parties entered into a written contract in 1984 fixing the rate of Seyfarth's legal services at $155 per hour. Seyfarth concedes that the hourly rate of compensation for legal services provided at that time by its attorneys was $155 per hour but contests that a contract bound the parties to that rate. The district court never explicitly determined whether the alleged contract actually exists, and the record before us is inconclusive.
 
 
 [3]
 Section 1447 provides, in pertinent part:
 A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.
 28 U.S.C. S 1447(c).
 
 
 [4]
 The district court held that the fees and costs should include those related to the motion for judgment on the pleadings. Because we reverse the award of the attorneys' fees as a whole, we do not reach the question of their proper components or amount.
 
 
 [5]
 In relation to these objectives, the Court described the relevant attributes of past cases in which it had found preemption: "In each of these cases, ERISA pre-empted state laws that mandated employee benefit structures or their administration. Elsewhere, we have held that state laws providing alternative enforcement mechanisms also relate to ERISA plans, triggering pre-emption." Id. at 658.
 
 
 [6]
 In one recent case, the Court analyzed the purposes of ERISA and the effect of the state laws in question through the prism of traditional "conflict preemption" principles rather than through a preemption analysis rooted in 29 U.S.C. S 1144(a). See Boggs , 520 U.S. at 841; id. at 844 ("Conventional conflict pre-emption principles require pre-emption `where compliance with both federal and state regulations is a physical impossibility, . . . or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " (quoting Gade v. National Solid Wastes Management Assn., 505 U.S. 88, 98 (1992) (internal quotation marks and citation omitted))). The Court specifically avoided deciding whether ERISA's statute provided any further preemptive force than that present under the traditional preemption rules and whether traditional "field preemption " principles also apply. See id. at 841; but cf. John Hancock Mutual Life Ins. Co. v. Harris Trust & Savings Bank, 510 U.S. 86, 99 (1993) ("We discern no solid basis for believing that Congress, when it designed ERISA, intended fundamentally to alter traditional preemption analysis."); Dillingham, 519 U.S. at 334-36 (Scalia, J., concurring) (stating that the Court's ERISA preemption jurisprudence can be explained under the traditional principles, which should be the only test).
 
 
 [7]
 After concluding that preemption does not apply, we described "our holding [as] consistent with" Arizona State Carpenters. Geweke Ford, 130 F.3d at 1360.
 
 
 [8]
 In Operating Eng'rs, we also described favorably a short-hand formulation we had used before Travelers was decided:
 Is the state telling employers how to write their ERISA plans, or conditioning some requirement on how they write their ERISA plans? Or is it telling them that regardless of how they write their ERISA plans, they must do something else outside and indepen dently of the ERISA plans? If the latter . . . there is no preemp tion.
 Operating Eng'rs, 135 F.3d at 679 (citation and internal quotation marks omitted) (emphasis added) (ellipsis in original). as plans." Id. at 961.
 
 
 [9]
 We also addressed the subject of "field preemption" and concluded that "[i]n enacting ERISA, Congress intend to occupy the field of regulation of employee welfare and pension benefit plans. This occupation is complete, however, only as to regulation of ERISA plans.
 
 
 [10]
 ERISA defines a "party in interest" as one who "provid[es] services" to an ERISA plan. 29 U.S.C. S 1002(14)(B).
 
 
 [11]
 ERISA section 406(a)(1) provides:
 Except as provided in section 1108 of this title:
 (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect--
 . . . .
 (C) furnishing of goods, services, or facilities between the plan and a party in interest;
 . . . .
 29 U.S.C. S 1106(a)(1). ERISA section 408(b) provides:
 The prohibitions provided in section 1106 of this title shall not apply to any of the following transactions:
 . . . . (2) Contracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor.
 . . . .
 29 U.S.C. S 1108(b).
 
 
 [12]
 Similarly, if Rutledge were suing Seyfarth on the grounds that Seyfarth had committed legal malpractice by providing substandard service, we might find no ERISA-governed relationship at issue in the case before us. However, in the circumstances of this case, ERISA SS 406 and 408 do explicitly govern the relationship between the lawyers and the ERISA plans in the respect here at issue -excessive fees. Therefore, unlike in Blue Cross of Cal., Rutledge's claims precisely "touch on" the relevant ERISA relationship, and unlike the bank in Arizona State Carpenters, legal service providers do relate to the Plans in a manner different from their relation to other clients -i.e., they relate to them under the governance of ERISA SS 406 and 408.
 
 
 [13]
 Rutledge asserts that his claims could not be subject to ERISA preemption because he sought monetary damages, including punitive damages, and because the civil enforcement provision provides for only equitable relief. This argument fails, for we recently held that the unavailability of a particular remedy does not undermine ERISA preemption. See Bast v. Prudential Ins. Co. of Am., 150 F.3d 1003, 1010 (9th Cir. 1998). In Bast, we stated that "ERISA preempts state law claims, even if the result is that a claimant, relegated to asserting a claim only under ERISA, is left without a remedy. The focus is on ERISA. If it does not provide a remedy, none exists." Id.; see also Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 55 (1986) (noting that preemption may displace state law claims even when the state law authorizes a remedy unavailable under the federal provision).
 
 
 [14]
 We deny Seyfarth's motion for judicial notice as moot.