265 F.3d 811 (9th Cir. 2001)
 JULIO ABRAHAM; PAUL AGAZZI; GIUSPPE AIELLO; BENNIE ANSELMO, SR.; THOMAS ARENS; RENATO AVANZINO; LILY BACIGALUPI; PETER BACIGALUPI, JR.; DAVID E. BALLESTRAZZE; MIKE BALLESTRAZZE; WILLIAM BANDETTINI; MARY BARIERI; JOHN BARONI; PIETRO BATTILANA; ANTOINETTE BAVOSO; MICHAEL J. BIAGINI; WILLIAM BIONDINI, SR.; FRANKLIN BISHOP; HERBIE BOYD; MADELINE BRANDI; PAUL BRUNETTA; NATALIO CADEMATORI; FLAVIO CALCAGNO; FERNANDO CAMBRI; RITA CANEVARI; THOMAS J. CANEVARI; PRIMO CAPELLA; COSTANTINO CARAMATTI; JOHN CARUSO; AMY M. CATELLI; GETULIO CATENA; FRANK CHAPPELLONE; EDWARD CHIAPPARI; ATTILIO CHIESA; ESTATE OF GEORGE CODINO; QUANITO CUNEO; UGO CUNEO; VICTOR D'AGNOLO; RAY DAL POGETTO; CASIMIRO DAMELE; ALFRED DE MARTINI; EUGENE DE MARTINI; GINO DE MARTINI; PAUL DE MARTINI; ADOLFO DEL CARLO; VINCE DELFINO; LAWRENCE DELLA CELLA; MARY DELLA CELLA; SUSAN DELLA CELLA; ANITA DELUCCHI; MARIO DELUCCHI; NORMAL DEPAOLI; ANGELO L. DEVINCENZI; GLORIA DEVINCENZI; JAMES D. DEVINCENZI; VICKI DUHAGON; ESTATE OF J.B. ELLIS; ALIPIO FATICA; ELMO FATICA; GIOBATTA FAZIO; LEON FERGUSON; ANA FERRANDO; LUCIANO FERRARI; CHAROLETTE FINI; JAMES FIRPO; SERGIO FOLENA; ALESIO FOPPIANO; FORTUNATO CONTI; EVA FRANCESCHI; PETE FRANCESCHI; ESTATE OF ANNA MARIE FRANCO; GIACOMO FRANCO; JOHN P. FRANCO; JOHN FREDERICK; DOROTHEA GARAVENTA; EDWARD GERMANO; BENEDETTO GHIGLIAZZA; BERNARDO GHIGLIAZZA; FREDERICO GHIGLIERI; ANNA GHIRARDOZZI; ANNA GHIRARDOZZI; GLORIA GHIRARDOZZI; LOU GIANNONE; CARLO GINOCCHIO; HUGO GIOVANNINI; SISTO GIULIACCI; UBALDO GOBBO; MARIO GRELLI; PIERO GRELLI; BARBARA HAMILTON; OREL JACKSON, JR.; PEARLIE B. LEE; HAROLD LOPEZ; JOSEPH LUCCHETTI; LUIGI SCIAMANNA; ATTILIO MALATESTA; EMIL MANGINI; LOUIS MATTEUCCI; ROGER MICHELI; LUIS MORALES; GIACOMO MOSCONE; JOHN MOSCONE; ANGELO MUSANTE; ALVARO NARDI; ESTATE OF MICHELE NARDI; SANDY OBERTELLO; TONY ONETO; IVAN OPLANIC; VINCENZO PASQUINELLI; ANTONIO PASSETTI; QUINTO PASSETTI; ALFREDO PERLI; OTTO PERUCCI; ROBERT PESSAGNO; VIRGINIA PESSAGNO; RODOVAN PESUSIC; VONDA PEVERADA; HUGO PISANI; ARMANDO PUCCI; GRACE PUCCINELLI; SERGO PUCCINELLI; FLORA RAGGIO; INEZ RAJEWSKI; JACK RAJEWSKI; LOUIE J. RATTO; PAUL RATTO; PETER RATTO; ANGELO RICCHETTI; FRANCESCO RISSOTO; WILLIAM S. ROBERTS; ERNEST RONZANI; RANIERO ROSELLI; MARIO ROSSI; ALBERT SCIAMANNA; WILLIAM SEGARINI; RAY SHARP, SR.; DANTE STECCONE; MARIO STECCONE; LUIS STELLA; ESTATE OF BILLY TERRY; LUIS M. TORRES; TOM TRAVERSO; LINDA TREGENZA; JUDY VUCCI; PAUL WORDEN; TONY ZAPPETTINI, PLAINTIFFS-APPELLANTS,
v.
NORCAL WASTE SYSTEMS INC; MANUEL C. CONTE; ROBERT L. ANDERSON; ARCHIE HUMPHREY; JAMES PAYE; NORCAL WASTE SYSTEMS, INC. EMPLOYEE STOCK OWNERSHIP PLAN AND
TRUST; CHASE MANHATTAN BANK, N.A.; SECURITY PACIFIC BANK; BANK OF CALIFORNIA; CALIFORNIA FEDERAL BANK; MICHAEL T. SANGIACOMO; PETER GARDELLA; JOHN DEMARTINI; FIORE GARBARINO; JOHN B. MOLINARI; LEROY MORETTI, DEFENDANTS,
AND
BANK OF AMERICA, AS SUCCESSOR TO SECURITY PACIFIC NATIONAL BANK, THE INDENTURE TRUSTEE, DEFENDANT-APPELLEE.
JULIO ABRAHAM; PAUL AGAZZI; GIUSPPE AIELLO; BENNIE ANSELMO, SR.; THOMAS ARENS; RENATO AVANZINO; LILY BACIGALUPI; PETER BACIGALUPI, JR.; DAVID E. BALLESTRAZZE; MIKE BALLESTRAZZE; WILLIAM BANDETTINI; MARY BARIERI; JOHN BARONI; PIETRO BATTILANA; ANTOINETTE BAVOSO; MICHAEL J. BIAGINI; WILLIAM BIONDINI, SR.; FRANKLIN BISHOP; HERBIE BOYD; MADELINE BRANDI; PAUL BRUNETTA; NATALIO CADEMATORI; FLAVIO CALCAGNO; FERNANDO CAMBRI; RITA CANEVARI; THOMAS J. CANEVARI; PRIMO CAPELLA; COSTANTINO CARAMATTI; JOHN CARUSO; AMY M. CATELLI; GETULIO CATENA; FRANK CHAPPELLONE; EDWARD CHIAPPARI; ATTILIO CHIESA; ESTATE OF GEORGE CODINO; QUANITO CUNEO; UGO CUNEO; VICTOR D'AGNOLO; RAY DAL POGETTO; CASIMIRO DAMELE; ALFRED DE MARTINI; EUGENE DE MARTINI; GINO DE MARTINI; PAUL DE MARTINI; ADOLFO DEL CARLO; VINCE DELFINO; LAWRENCE DELLA CELLA; MARY DELLA CELLA; SUSAN DELLA CELLA; ANITA DELUCCHI; MARIO DELUCCHI; NORMAL DEPAOLI; ANGELO L. DEVINCENZI; GLORIA DEVINCENZI; JAMES D. DEVINCENZI; VICKI DUHAGON; ESTATE OF J.B. ELLIS; ALIPIO FATICA; ELMO FATICA; GIOBATTA FAZIO; LEON FERGUSON; ANA FERRANDO; LUCIANO FERRARI; CHAROLETTE FINI; JAMES FIRPO; SERGIO FOLENA; ALESIO FOPPIANO; FORTUNATO CONTI; EVA FRANCESCHI; PETE FRANCESCHI; ESTATE OF ANNA MARIE FRANCO; GIACOMO FRANCO; JOHN P. FRANCO; JOHN FREDERICK; DOROTHEA GARAVENTA; EDWARD GERMANO; BENEDETTO GHIGLIAZZA; BERNARDO GHIGLIAZZA; FREDERICO GHIGLIERI; ANNA GHIRARDOZZI; ANNA GHIRARDOZZI; GLORIA GHIRARDOZZI; LOU GIANNONE; CARLO GINOCCHIO; HUGO GIOVANNINI; SISTO GIULIACCI; UBALDO GOBBO; MARIO GRELLI; PIERO GRELLI; BARBARA HAMILTON; OREL JACKSON, JR.; PEARLIE B. LEE; HAROLD LOPEZ; JOSEPH LUCCHETTI; LUIGI SCIAMANNA; ATTILIO MALATESTA; EMIL MANGINI; LOUIS MATTEUCCI; ROGER MICHELI; LUIS MORALES; GIACOMO MOSCONE; JOHN MOSCONE; ANGELO MUSANTE; ALVARO NARDI; ESTATE OF MICHELE NARDI; SANDY OBERTELLO; TONY ONETO; IVAN OPLANIC; VINCENZO PASQUINELLI; ANTONIO PASSETTI; QUINTO PASSETTI; ALFREDO PERLI; OTTO PERUCCI; ROBERT PESSAGNO; VIRGINIA PESSAGNO; RODOVAN PESUSIC; VONDA PEVERADA; HUGO PISANI; ARMANDO PUCCI; GRACE PUCCINELLI; SERGO PUCCINELLI; FLORA RAGGIO; INEZ RAJEWSKI; JACK RAJEWSKI; LOUIE J. RATTO; PAUL RATTO; PETER RATTO; ANGELO RICCHETTI; FRANCESCO RISSOTO; WILLIAM S. ROBERTS; ERNEST RONZANI; RANIERO ROSELLI; MARIO ROSSI; ALBERT SCIAMANNA; WILLIAM SEGARINI; RAY SHARP, SR.; DANTE STECCONE; MARIO STECCONE; LUIS STELLA; ESTATE OF BILLY TERRY; LUIS M. TORRES; TOM TRAVERSO; LINDA TREGENZA; JUDY VUCCI; PAUL WORDEN; TONY ZAPPETTINI, PLAINTIFFS-APPELLEES,
v.
NORCAL WASTE SYSTEMS INC; MANUEL C. CONTE; NORCAL WASTE SYSTEMS, INC. EMPLOYEE STOCK OWNERSHIP PLAN AND TRUST, DEFENDANTS-APPELLEES,
THE BANK OF AMERICA, DEFENDANT-APPELLANT,
AND
CHASE MANHATTAN BANK, N.A.; BANK OF CALIFORNIA; CALIFORNIA FEDERAL BANK, DEFENDANTS.
BANK OF AMERICA NT&SA, AS SUCCESSOR IN INTEREST BY MERGER WITH SECURITY PACIFIC NATIONAL BANK, INDENTURE TRUSTEE, PLAINTIFF-APPELLANT,
v.
NORCAL SOLID WASTE SYSTEMS OPINION EMPLOYEE STOCK OWNERSHIP PLAN AND TRUST, DEFENDANT-APPELLEE.
 No. 99-17040, No. 99-17474, No. 99-17132
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted December 11, 2000
Filed September 7, 2001
 
 [Copyrighted Material Omitted]
 Stephen H. Dye, Schnader, Harrison, Segal & Lewis, San Francisco, California, for the plaintiffs-appellants and cross-appellees, in No. 99-17040 and No. 99-17474.
 Paul J. Ondrasik, Jr., Washington, D.C., for defendant-appellee Norcal Waste Systems, Inc., in No. 99-17040 and 99-17474.
 Deborah S. Ballati, San Francisco, California, for defendant-appellee Norcal Waste Systems, Inc., Employee Stock Ownership Plan and Trust, in No. 99-17040 and No. 99-17474, and for defendant-appellee in No. 99-17132.
 James B. Wright, San Francisco, California, for defendant-appellee and cross-appellant Bank of America, N.A., in No. 99-17040 and No. 99-17474, and for the plaintiff-appellant in No. 99-17132.
 Appeal from the United States District Court for the Northern District of California Charles A. Legge, District Judge, Presiding D.C. No. CV 94-3076 CAL, D.C. No. CV 94-3076 CAL, D.C. No. CV 99-1175 CAL
 Before: David R. Thompson, Diarmuid F. O'Scannlain, and A. Wallace Tashima, Circuit Judges.
 
 Tashima, Circuit Judge
 
 1
 These consolidated appeals arise out of a complex background of financial transactions and litigation stemming from the leveraged buyout of company stock by an employee stock ownership plan. Plaintiffs in the earlier of the two actions (No. 99-17040 and No. 99-17474) ("Plaintiffs") originally brought suit in California state court, alleging only state law causes of action in their complaint. Defendants successfully removed the case to federal district court on the basis of complete preemption, pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq. The parties raise numerous issues on appeal from the ensuing litigation. Because we conclude that the district court lacked original subject matter jurisdiction, necessary for removal pursuant to 28 U.S.C. §§ 1441, we must vacate the judgments below. We have jurisdiction to entertain this appeal from the district court's final judgment, 28 U.S.C. §§ 1291, and to decide the jurisdictional issue, Toumajian v. Frailey, 135 F.3d 648, 652-53 (9th Cir. 1998)
 
 I. BACKGROUND
 
 2
 a. Facts
 
 
 3
 Norcal Solid Waste Systems, Inc. ("Norcal"), a California corporation, was an employee-owned garbage company. Plaintiffs are former employee-shareholders (or their heirs and assigns) of Norcal. Norcal created the Norcal Solid Waste Systems, Inc., Employee Stock Ownership Plan and Trust (the "Norcal ESOP" or "ESOP") to purchase shares from Plaintiffs in a leveraged buyout of company stock. There is no dispute that the ESOP is an employee benefit plan within the meaning of ERISA. In December 1986, Plaintiffs sold their stock to the ESOP as part of the leveraged buyout transaction for $65 million in cash and $36.5 million in long-term notes. Forty-four of the Plaintiffs also were Norcal employees and participants in the benefit plan ("ESOP participants").
 
 
 4
 The 1986 leveraged buyout was accomplished through a complex financing arrangement in which the ESOP's acquisition of Norcal's shares was financed by bank loans to Norcal, which in turn then lent those funds to the ESOP. Bank of America (the "Bank") served as a senior lender (among several banks) and a financial advisor to Norcal for the leveraged buyout. The long-term notes that were issued to the former shareholders pursuant to the buyout were governed by the terms of a trust indenture agreement (the "Indenture") between the Norcal ESOP, as obligor, and Security Pacific National Bank, as the trustee ("Security Pacific " or the "Trustee"). Security Pacific also acted as a lender to Norcal in the 1986 transaction.
 
 
 5
 The notes were non-recourse as against Norcal, were not secured by Norcal stock, were subordinated to the Norcal ESOP's senior indebtedness (i.e. the bank loans to Norcal that were subsequently lent to the ESOP), and were to be paid in accordance with ERISA regulations for exempt transactions. Among the other provisions of the Indenture relevant to the litigation were the following:
 
 
 6
 Section 8.01(b): "In case an Event or Default has occurred and is continuing, the Trustee shall exercise such of the rights and powers vested in it by this Indenture, and use the same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances in the conduct of his or her own affairs."
 
 
 7
 Section 8.07(3): "[The Plan agrees] to indemnify the Trustee for, and to hold it harmless against, any loss, liability or expense incurred without negligence or bad faith on its part, arising out of or in connection with the acceptance or administration of this trust, including the costs and expenses of defending itself against any claim or liability in connection with the exercise or performance of any of its powers or duties hereunder." Section 10-2: "The Plan shall not consolidate with or merge into any entity or convey, lease or transfer its properties and assets substantially as an entirety to any Person unless the Plan shall first redeem the entire Outstanding principal of all of the Notes."
 
 
 8
 The Indenture also provided that "it shall be construed in accordance with and governed by the laws of the State of California."
 
 
 9
 In December 1987, Norcal consummated a transaction with Envirocal, Inc. ("Envirocal"), whereby the Norcal ESOP and the Envirocal ESOP (simultaneously with their respective sponsors) combined to form a single entity.[1] The former owners of Envirocal exchanged stock for a combination of cash and notes. Security Pacific also acted as a lender to Norcal in the 1987 Envirocal transaction. On May 15, 1988, in its capacity as the Trustee, Security Pacific sent an annual reporting letter to Plaintiff note holders stating, among other things, that "[n]o other action has been taken by the Trustee, in the performance of its duties under the Indenture, which, in its opinion, materially affect the Noteholders." Only in September 1988 did the ESOP advise its participants (44 of whom are among Plaintiff note holders) of the 1987 Envirocal transaction.
 
 
 10
 Between 1986 and April 1991, the Norcal ESOP paid each quarterly interest payment due on the notes, and the Trustee also transferred all of these payments to Plaintiff note holders, as required by the Indenture. In April of 1991, however, Norcal defaulted on its indebtedness to the bank lenders and to the Envirocal note holders, and the ESOP defaulted on its indebtedness to Plaintiff note holders. On March 7, 1991, Security Pacific sent letters to Norcal and the ESOP resigning as Trustee under the Indenture (as well as under the subsequent indenture formed for the Envirocal note holders, for which it also served as trustee), and on May 14, 1991 a successor trustee was formally substituted.
 
 
 11
 b. Proceedings
 
 
 12
 Plaintiffs commenced an action in California state court in 1994 against the Trustee, Norcal, the ESOP, Norcal's bank lenders, and several individual officers and directors of the defendant corporations (including some members of the ESOP Administrative Committee). The Bank was sued not only in its capacity as a lender in the 1986 leveraged buyout, but also as successor in interest to Security Pacific, which was both a lender and the Trustee.[2] Plaintiffs alleged state law causes of action including fraud, breach of contract, tortious interference with contract, negligence, breach of fiduciary duty, and unjust enrichment.
 
 
 13
 The alleged conduct underlying Plaintiffs' claims was a series of breaches, misrepresentations, omissions, concealment, and conflicts of interest by Defendants, as well as an alleged conspiracy among them, in conjunction with the initial leveraged buyout, the 1987 Envirocal transaction, and subsequent ESOP activities. These acts allegedly resulted in Plaintiffs' unwitting reliance in tendering their shares in Norcal for restricted notes, the failure to redeem or enforce redemption of those notes at the time of the Envirocal transaction, and the eventual default on those notes. Forty-four of the Plaintiffs, who were also ESOP participants, simultaneously initiated a separate action in federal district court against Norcal, the Norcal ESOP, and some individual defendants for the breach of their duties imposed by ERISA in conjunction with the 1987 Envirocal transaction and subsequent ESOP activities.
 
 
 14
 Defendants removed the action from state court to federal court on the basis of complete ERISA preemption. The district court denied Plaintiffs' motion to remand, concluding that, at least with respect to the subset of 44 Plaintiffs who were ESOP participants, the state law causes of action based on constructive fraud, fiduciary duty, and negligence were preempted by ERISA. The district court then asserted supplemental jurisdiction over the remaining claims and parties. See 28 U.S.C. §§ 1367(a). On motion for partial summary judgment by Plaintiffs, the district court ruled on June 30, 1995, that the 1987 Envirocal transaction constituted a triggering event for purposes of redemption under Section 10-2 of the Indenture and that the ESOP had defaulted under the terms of that provision. In August 1995, Norcal and the ESOP completed a settlement with Plaintiffs for the principal due on the notes, but not the interest (the "Settlement"). Under the Settlement, Plaintiffs agreed to a broad release of all claims against all parties, excepting only their preservation of the claims against the Trustee falling outside the scope of the ESOP's contractual indemnity obligations to the Trustee pursuant to Section 8.07(3) of the Indenture. The district court subsequently entered orders determining the Settlement to be in good faith and dismissing the released claims and parties.
 
 
 15
 In February 1996, Plaintiffs filed a second amended complaint against the Bank of America alone. Prior to trial, Norcal and the ESOP intervened to obtain a declaration that they had no further indemnity obligations to the Bank under the Indenture after the Settlement. On December 17, 1996, the district court granted summary judgment in favor of Norcal and the ESOP on their complaint in intervention for declaratory relief. After trial on the remaining claims, judgment on the jury verdict was entered in favor of the Bank.[3] The district court denied Plaintiffs' motion for a new trial and entered final judgment on October 22, 1999. Plaintiffs timely appeal, and the Bank timely cross-appeals (No. 99-17040 and No. 99-17474).
 
 
 16
 After the verdict, the Bank commenced a separate action in federal court against the ESOP seeking a declaration of its entitlement to indemnity under the Indenture for its postSettlement defense costs in light of the specific findings of the special verdict. On cross-motions for summary judgment, the district court again ruled in favor of the ESOP on the indemnity issue. Final judgment in that action was entered on August 25, 1999. The Bank timely appeals (No. 99-17132).
 
 II. JURISDICTION
 
 17
 Plaintiffs contend that the district court lacked subject matter jurisdiction at the time the case was removed and at the time of judgment; therefore, the denial of the motion to remand was error and the proceedings and judgment must be vacated.[4] The Bank, Norcal, and the ESOP contend that Plaintiffs' claims for constructive fraud, breach of fiduciary duty, and negligence in the state court complaint (at least with respect to the 44 Plaintiffs who are also ESOP participants) are subject to complete preemption under ERISA, providing the court with subject matter jurisdiction and a federal question to anchor removal of the entire action.[5] Questions of subject matter jurisdiction and removal are reviewed de novo. Toumajian, 135 F.3d at 652. The denial of a motion to remand a removed case by the district court is also reviewed de novo. ARCO Envtl. Remediation, L.L.C. v. Dep't of Health and Envtl. Quality, 213 F.3d 1108, 1111 (9th Cir. 2000).
 
 
 18
 Removal under 28 U.S.C. §§ 1441 requires that the complaint contain a claim within the original subject matter jurisdiction of the federal district court. Toumajian , 135 F.3d at 653. Thus, only if we can discern a federal question was removal proper.
 
 
 19
 Plaintiffs' complaint did not facially assert any federal claim; therefore, the original subject matter jurisdiction required to support removal exists only if ERISA completely preempted any of the state law claims. See Rutledge v. Seyfarth, Shaw, Fairweather, & Geraldson, 201 F.3d 1212, 1215 (9th Cir.), amended by 208 F.3d 1170 (9th Cir.), cert. denied, 531 U.S. 992 (2000). The doctrine of complete preemption has been described as "an independent corollary to the wellpleaded complaint rule". Id. (quoting Harris v. Provident Life and Accident Ins. Co., 26 F.3d 930, 934 (9th Cir. 1994)). Complete preemption can be invoked only when two conditions are satisfied: (1) ERISA expressly preempts the state law cause of action under 29 U.S.C. §§ 1144(a) (i.e. "conflict preemption") and (2) that cause of action is encompassed by the scope of the civil enforcement provision of ERISA, 29 U.S.C. §§ 1132(a) (i.e. "displacement"). Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 60 (1987); Rutledge, 201 F.3d at 1216. Neither of these conditions was satisfied in this case.
 
 
 20
 a. Conflict Preemption under 29 U.S.C. §§ 1144(a)
 
 
 21
 Section 1144(a) states, in relevant part, that "provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." The critical phrase "relate to" has been the source of much confusion as well as multiple and slightly differing analyses by this court. See, e.g., Rutledge, 201 F.3d at 1216-19 (surveying our approach to the "relates to" requirement but ultimately declining to develop a test "describing the outer bounds of ERISA [conflict] preemption"). We recognize that while this "relate to" language has been construed quite broadly in the past, the Supreme Court has narrowed the applicability of§§ 1144(a) in recent years ever since its decision in New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645 (1995). See also Toumajian, 135 F.3d at 654 n.3 (acknowledging that "[r]ecently, the scope of this broad `relate to' preemption was markedly narrowed" (quoting Travelers, 514 U.S. at 655)).
 
 
 22
 State law "relates to" an ERISA benefit plan if there is a "connection with" or "reference to" such a plan. Blue Cross v. Anesthesia Care Assocs. Med. Group, Inc., 187 F.3d 1045, 1052 (9th Cir. 1999) (quoting Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 324 (1997)). As we discussed in Rutledge, the "reference to" prong of the test is fairly precise and did not apply there -nor is it applicable here -because the state law in question did not act "immediately and exclusively" upon an ERISA plan nor is such a plan "essential" to the operation of the law. 201 F.3d at 1216 (quoting Dillingham, 519 U.S. at 325). Plaintiffs' allegedly preempted claims here were solely based on state law theories of constructive fraud, breach of fiduciary duty, and negligence, so the relevant state law certainly does not act immediately and exclusively on an ERISA plan, nor is such a plan essential to the operation of the law. In order "to determine whether a state law has the forbidden connection, we look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood to survive, as well as to the nature and effect of the state law on ERISA plans." Egelhoff v. Egelhoff, 532 U.S. 141, 121 S. Ct. 1322, 1327 (2001) (internal quotation marks omitted). The only argument advanced for removal, and upon which the district court relied, is that the state law claims have the necessary "connection with" an ERISA plan because they encroach upon ERISA-regulated relationships.[6]
 
 
 23
 We have previously recognized that"a core factor leading to the conclusion that a state law claim is preempted is that the claim bears on an ERISA-regulated relationship." Rutledge, 201 F.3d at 1219. Under the rationale of a "relationship" test, "we look to whether the state law encroaches on relationships regulated by ERISA, such as between plan and plan member, plan and employer, and plan and trustee." Blue Cross, 187 F.3d at 1053. Those regulated relationships that are purported to be encroached upon in this case are between: (i) plan and "parties in interest," as defined in 29 U.S.C. §§ 1002(14); (ii) plan and participants; and (iii) plan and fiduciaries. We find none of these arguments persuasive.
 
 
 24
 With respect to the first relationship, the Bank, Norcal, and the ESOP each suggests that ERISA comprehensively governed the sale of stock and extension of credit between a plan and "parties in interest," such as the employees of the plan sponsor; and that absent the express statutory exemptions provided by ERISA, any transaction constituting a "lending of money or other extension of credit between the plan and a party in interest" would have been a prohibited transaction. See 29 U.S.C. §§ 1106(a)(1)(B); see also id. §§ 1108(b)(3) (exempting loan when "primarily for the benefit of participants and beneficiaries of the plan" and "at an interest rate which is not in excess of a reasonable rate") and §§ 1108(e) (exempting acquisition by a plan of qualifying employer securities if "for adequate consideration" and"no commission is charged"). Certainly that subset of Plaintiffs who were current Norcal employees would be "parties in interest" for the purposes of the prohibited transaction provision. See id. §§ 1002(14)(A). But the state law claims alleged in the initial complaint did not implicate the prohibited transaction provision, which "serves ERISA's purposes by protecting a plan's participants and beneficiaries from a depletion of plan assets through shady, inside deals." Rutledge, 201 F.3d at 1222. Indeed, the claims do not remotely concern the objectives of ERISA.
 
 
 25
 Like all Plaintiffs, the employees were suing as note holders for state law fraud, breach of fiduciary duty, and negligence arising from a transaction that was expressly exempted from the prohibited transaction provision; their status as "parties in interest" is irrelevant. Unlike in Rutledge, where the preempted claims were premised on a relationship between a plan and a legal service provider in the very respects governed by ERISA's regulation of prohibited transactions, the state law claims here do not bear upon any ERISA-governed relationship between a plan and "parties in interest." See id. ("Because the allegation at issue in the state law claims . . . is precisely the sort of prohibited transaction governed by ERISA, we hold . . . that the claims are preempted.") By carefully crafting exceptions to the transactions prohibited under ERISA and the conditions for those exceptions, Congress presumably understood the scope of the state law that would otherwise survive to govern such transactions in all aspects unrelated to the objectives and administration of ERISA. In this way, the ESOP's relationship with Plaintiffs who were also Norcal employees was no different from its relationship with the rest of the Plaintiff note holders. Cf. Arizona State Carpenters, 125 F.3d at 724 ("As a service provider offering nonfiduciary custodial services, Citibank's relationship with the Trust Funds was no different from that between Citibank and any of its customers."). Accordingly, we conclude that "[i]n the circumstances of this case, the connection between the state common law principles and ERISA's regulation of employee benefit plans is simply too tenuous, remote or peripheral to trigger preemption. " Id. (internal quotation marks and citation omitted).
 
 
 26
 Nor, under similar reasoning, is a relationship between plan and participant encroached upon here. Those Plaintiffs who were also ESOP participants have an independent creditor relationship with the ESOP as a corporate entity based upon their status as former shareholders and current note holders under the Indenture. See Gen. Am. Life Ins. Co. v. Castonguay, 984 F.2d 1518, 1521--22 (9th Cir. 1993) ("But ERISA doesn't purport to regulate those relationships where a plan operates like any other commercial entity -for instance, the relationship between the plan and its own employees, or the plan and its insurers or creditors, or the plan and the landlords from whom it leases its office space." (emphasis added)). The claims of fraud, breach of fiduciary duty, and negligence arise from that status as note holders, and do not "touch on" the status of the ESOP as a benefit plan or of any of Plaintiffs as participants in that plan (or on any claim the participants may make against the plan in that capacity). Cf. Blue Cross, 187 F.3d at 1054 ("The . . . claims concern only promises that Blue Cross made as a health care plan to its participating physicians. They do not touch on Blue Cross' fiduciary status, or any claims that a beneficiary may make against Blue Cross in that capacity.")
 
 
 27
 In Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enter., Inc., 793 F.2d 1456 (5th Cir. 1986), an ERISA trust sought to invoke the state law of fiduciary duty as a stockholder by bringing a claim against a corporate director who was also a plan fiduciary. Finding no conflict preemption, the court stated:
 
 
 28
 The director's duty arises from his status as director; the law imposes the duty upon him in that capacity only. Similarly, the shareholder's rights against the corporate director arise solely from his status as shareholder. That in such a case as ours the director happens also to be a plan fiduciary and the shareholder a benefit plan has nothing to do with the duty owed by the director to the shareholder. The state law and ERISA duties are parallel but independent: as director, the individual owes a duty, defined by state law, to the corporation's shareholders, including the plan; as fiduciary, the individual owes a duty, defined by ERISA, to the plan and its beneficiaries. Thus, the state law does not affect relations between the ERISA fiduciary and the plan or the plan beneficiaries as such; it affects them in their separate capacities as corporate director and shareholder.
 
 
 29
 Id. at 1468. Here, any duties owed by the plan to the ESOP participant Plaintiffs are also parallel but independent to those owed to them as note holders. The rights and duties under state law between the ESOP and the note holders, whether ESOP participants or not, are distinct from any ERISA-governed relationship between a plan and its participants. The state claims do not affect that regulated relationship.
 
 
 30
 The third relationship allegedly encroached upon is that between a plan and its fiduciaries, specifically those members of the ESOP Administrative Committee named in the complaint. It is suggested that, as ERISA fiduciaries, the members of the ESOP Administrative Committee were required by ERISA to act "solely in the interest of the [plan's] participants and beneficiaries" for the "exclusive purpose " of "providing benefits to participants and their beneficiaries, " as well as "defraying reasonable expenses of administering the plan." 29 U.S.C. §§ 1104(a)(1)(A). Assuming that the members of the Administrative Committee are fiduciaries within the meaning of 29 U.S.C. §§ 1002(21)(A), we do not believe that the ERISA-regulated relationship is implicated here. Relying on Castonguay, the ESOP contends that the Committee could not act with that undivided loyalty to the plan and its participants and beneficiaries required by ERISA if state law bound its members to account for the interests and obligations asserted by Plaintiffs. In Castonguay, an insurer brought state law fraud and negligent misrepresentation claims against an ERISA trustee based on allegedly false statements made while securing for the trust an insurance policy to pay for unmanageable plan payments to participants. 984 F.2d at 1520. Finding the state law claims to be preempted because they raised "precisely the sort of divided loyalty ERISA is meant to prevent," the court concluded: "We hold that, as a matter of federal law, ERISA plan trustees can't be held personally liable for the trust's contracts." Id. at 1523-24. We first note that Castonguay was decided prior to the recent trend narrowing the preemptive force of the "relates to" standard under §§ 1144(a). Moreover, despite the broad language of undivided loyalties in Castonguay, it is not immediately apparent how the alleged fraud, breach of duty, and negligence of the Committee members on behalf of the ESOP here would directly conflict with their fiduciary duties under ERISA. Unlike that case, the state law claims here did not arise from transactions directly relating to plan benefits or administration. The conduct at issue concerned the acquisition of Norcal shares in exchange for restricted notes and a subsequent failure to redeem those notes. As such, the only impact that the state law duties might have had on the plan or its beneficiaries is an indirect economic burden, which we have held to be insufficient for conflict preemption. See Blue Cross , 187 F.3d at 1052 (holding "the economic effects that . . . claims might have on ERISA plans are not sufficient for preemption to occur"). Finally, as in Sommers, the members of the Committee are not being sued in their capacity as plan fiduciaries, but rather as the agents of the ESOP corporate entity that obtained Norcal shares from Plaintiff note holders. State law imposes duties upon them in that capacity only; it does not affect them in their capacity as ERISA plan fiduciaries and thus does not encroach upon any regulated relationship between the plan and its fiduciaries.
 
 
 31
 Plaintiffs brought suit in their capacity as note holders pursuant to the terms of the Indenture, which by its own terms is governed by California law. Although some Plaintiffs were also ESOP participants and Norcal employees, their claims were brought solely in their capacity as former shareholders and current creditors. Moreover, this financial relationship arose from a transaction explicitly exempted from ERISA regulations and the claims were unrelated to any aspect of a relationship governed by those regulations. The fraud, breach of fiduciary duty, and negligence causes of action under state law have nothing to do with benefits, the administration of a benefit plan, or any duties imposed by ERISA. No ERISA-regulated relationship is encroached upon by the state law claims. Therefore, the state law claims do not "relate to" an ERISA benefit plan within the meaning of 29 U.S.C. §§ 1144(a). We conclude therefore that there was no basis to find conflict preemption under ERISA; thus, that the first condition for complete preemption was unsatisfied.
 
 
 32
 b. Displacement under 29 U.S.C. §§ 1132(a)
 
 
 33
 Section 1132(a) provides the exclusive claims that are available under ERISA, as well as by whom and against whom such claims may be brought. See Toumajian , 135 F.3d at 656. The Bank, Norcal, and the ESOP all contend that even though the state complaint did not state an ERISA cause of action on its face, the claims of the ESOP participant Plaintiffs should be displaced for purposes of complete preemption analysis because they are encompassed by ERISA's civil enforcement provision, specifically §§ 1132(a)(2)[7] and (a)(3)[8]. We disagree.
 
 
 34
 Pursuant to the terms of those subsections, "[p]articipants and beneficiaries, along with plan fiduciaries, depending on their respective roles, are authorized to bring actions for appropriate relief for breach of fiduciary duty or for injunctions or to obtain other appropriate equitable relief to redress an ERISA violation or to enforce the terms of the plan or the provisions of ERISA." Toumajian , 135 F.3d at 656; see also 29 U.S.C. §§ 1132(a)(2), (a)(3). Assuredly, a subset of Plaintiffs are plan participants entitled to bring suit under the civil enforcement provision of ERISA. In fact, the ESOP participant Plaintiffs here did precisely that by filing a separate federal complaint contemporaneously with the state court action that was later removed. The claims asserted by all Plaintiffs in the state court action, however, do not fall within the scope of §§ 1132(a) because those claims are based upon rights that arise under state law in their capacity as former shareholders of Norcal and current note holders under the Indenture, not upon any rights that are conferred, enforced, or governed by ERISA (nor upon a violation of the terms of a plan). As we have previously noted, "[A]n otherwise preempted claim may survive to the extent that it relies on a theory independent of the benefit plan." Tingey v. PixleyRichards West, Inc., 953 F.2d 1124, 1131 (9th Cir. 1992).
 
 
 35
 As discussed at length earlier, the claims of fraud, breach of fiduciary duty, and negligence at issue seek relief for all Plaintiffs on the basis of their reliance in tendering their Norcal shares to the ESOP, the eventual default on their notes, and the failure to redeem or enforce redemption on their notes at the time of the Envirocal transaction. Also, for the purposes of those Plaintiffs who could be considered "parties in interest," the leveraged buyout is an exempted transaction. Plaintiffs are not seeking relief on behalf of an ERISA plan, as required under the express terms of 29 U.S.C. §§ 1109(a), which is incorporated into §§ 1132(a)(2), and our case law. See Toumajian, 135 F.3d at 656 (citing Buster v. Greisen, 104 F.3d 1186, 1189 (9th Cir. 1997)). Nor do Plaintiffs' claims derive from a breach of "any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter." §§ 1109(a). Therefore §§ 1132(a)(2) is inapplicable. Moreover, none of these Plaintiffs "seek[s] relief as a participant, beneficiary, or fiduciary to enjoin any act or obtain any other equitable relief to redress any violations or enforce any provisions of ERISA." Toumajian, 135 F.3d at 656. Therefore §§ 1132(a)(3) is not applicable either.
 
 
 36
 Norcal and the ESOP seek to distinguish Toumajian on the ground that the complaint at issue in that case asserted state law claims for professional malpractice against a nonfiduciary service provider, whereas in this case ERISA fiduciaries were named in the complaint. But irrespective of the status of any of Defendants as the fiduciaries of an ERISA plan, none of the state law claims can be characterized as fiduciary breach claims within the scope of ERISA's civil enforcement provision. Simply put, the claims do not concern any plan fiduciaries in their capacity as such. Nor do they otherwise fall within the scope of ERISA's civil enforcement provision, 29 U.S.C. §§ 1132(a). We conclude therefore that there was no basis for displacement under ERISA; thus, the second condition for complete preemption was also unsatisfied.
 
 III. CONCLUSION
 
 37
 In summary, we conclude that neither of the necessary conditions for complete preemption under ERISA was satisfied here. Plaintiffs brought suit based on state law theories of fraud, breach of fiduciary duty, and negligence that cannot be said to "relate to" an ERISA plan within the meaning of 29 U.S.C. §§ 1144(a); nor are the claims encompassed within the scope of ERISA's civil enforcement provision, 29 U.S.C. §§ 1132(a). It is of no consequence that some Plaintiffs were also employees of the plan sponsor and plan participants at the time of suit because the claims have nothing to do with their status as such. Like all Plaintiffs, the ESOP participants brought suit in state court solely in their capacity as former shareholders and current note holders pursuant to the terms of the Indenture. Thus, the state law claims have no bearing on any ERISA-governed relationship and are not displaced by ERISA's civil enforcement scheme. Because there is no basis for complete preemption under ERISA, there was no federal question subject matter jurisdiction to support removal. And without a federal question, there was no anchor for the assertion of supplemental jurisdiction.
 
 
 38
 Accordingly, the judgment in each case is vacated and these cases are remanded to the district court with directions that, in No. 99-17040 and No. 99-17474, the case be remanded to state court and, in No. 99-17132, the action be dismissed without prejudice. Plaintiffs-Appellants in No. 99-17040 shall recover their costs on appeal from Defendants-Appellees. The parties in No. 99-17132 shall bear their own costs on appeal.
 
 
 39
 VACATED and REMANDED.
 
 
 
 Notes:
 
 
 [1]
 The parties disagree on the structure of the transaction for purposes of Section 10-2 of the Indenture.
 
 
 [2]
 The Bank succeeded to the interest of Security Pacific as the result of the merger of Security Pacific into the Bank.
 
 
 [3]
 The details of the verdict are immaterial to our analysis and disposition.
 
 
 [4]
 None of the parties contends, nor is it the case, that any alleged jurisdictional defect on removal may have been corrected by the time of final judgment on the merits, either via diversity or otherwise. Cf. Grubbs v. Gen. Elec. Credit Corp., 405 U.S. 699, 702-704 (1972) (whether or not case is properly removed, if court proceeds to judgment on merits without objections, issue is whether district court would have had original jurisdiction if case had been filed in a federal court, measured at time of judgment). Thus the only relevant question is whether subject matter jurisdiction existed at the time of removal.
 
 
 [5]
 For the purposes of this analysis, the original complaint is the operative pleading because that is the basis upon which removal was granted and Plaintiffs' motion to remand was denied. See Toumajian, 135 F.3d at 653 n.2.
 
 
 [6]
 The parties do not suggest, and we do not believe there to be, any reason that the state law claims at issue here may fall within the three traditional areas of preemption identified in Travelers and incorporated into the analysis of this court in Arizona State Carpenters Pension Trust Fund v. Citibank, 125 F.3d 715, 723 (9th Cir. 1997), namely state laws that: (1) mandate employee benefit structures or their administration; (2) bind employers or plan administrators to particular choices or preclude uniform administrative practice; and (3) provide alternative enforcement mechanisms to obtain ERISA plan benefits. Nor do we find that jurisdiction could be supported by preemption under any of the myriad "different, though compatible, tests" formulated by this court in our elusive quest "to follow the Supreme Court in fulfilling the statutory mandate of broad preemption without intruding upon state laws beyond the intention of Congress and the objectives of ERISA." Rutledge , 201 F.3d at 1217. Even were we to "eschew[ ] such multi-factor tests in favor of a more holistic analysis guided by Congressional intent," our analysis would be no different. Dishman v. UNUM Life Ins. Co. of Am., 250 F.3d 1272, 1278 n.15 (9th Cir. 2001). The only asserted basis for preemption here is an intrusion upon ERISA-regulated relationships.
 
 
 [7]
 Section 1132(a)(2) provides that a civil action may be brought "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." Section 1109 states in relevant part:
 Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any such losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through the assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.
 29 U.S.C. §§ 1109(a).
 
 
 [8]
 Section 1132(a)(3) provides that a civil action may be brought:
 by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.