289 F.3d 1137
 Karla FUNKHOUSER and Suzanne Pearce, on behalf of themselves and others similarly situated, Plaintiffs-Appellees, Cross-Appellants,
v.
WELLS FARGO BANK, N.A., Wells Fargo Bank, a corporation, and Norwest Corporation, Defendants-Appellants, Cross-Appellees.
 No. 00-35397.
 No. 00-35410.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 8, 2002.[1]
 Submission Deferred March 26, 2002.
 Resubmitted April 17, 2002.
 Filed May 15, 2002.
 
 COPYRIGHT MATERIAL OMITTED William Guas, Eduardo G. Roy, John Hurley, Natalia A. Beccia, Pillsbury Madison & Sutro LLP, San Francisco, CA; Stacey E. Mark, Lori Irish Bauman, Portland, OR, for the defendants-appellants-cross appellees.
 John P. Crowell, Portland OR; Douglas G. Combs, William D. Robinson, Morse & Bratt, Vancouver, WA, for the plaintiffs-appellees-cross appellants.
 Appeal from the United States District Court for the District of Oregon; Anna J. Brown, District Judge, Presiding. D.C. No. CV-99-01259-AJB.
 Before: B. FLETCHER, O'SCANNLAIN, and BERZON, Circuit Judges.
 OPINION
 O'SCANNLAIN, Circuit Judge.
 
 
 1
 We must decide whether a federal court may rule on ERISA preemption of a state law claim when it ultimately declines to exercise supplemental jurisdiction.
 
 
 2
 * In December 1998, Wells Fargo Bank merged with Northwest Bank to form a new entity that adopted the Wells Fargo name. In the wake of the merger, Wells Fargo changed its employee sick-time and vacation policy. Under the pre-merger sick-time policy, employees earned one sick day per month. Unused sick days could be carried over to succeeding years, but employees could take no more than 120 days per year. Employees were allowed to take up to ten sick days per year to care for a family member's illness. Sick days taken were paid at full pay, but unused days were not payable at termination.
 
 
 3
 Under the pre-merger vacation policy, employees earned between five and twenty-five days of paid vacation per year, depending upon seniority. Unused vacation days could be carried over to succeeding years, and were payable at termination.
 
 
 4
 The Paid Time Off ("PTO program") and Short Term Disability ("STD program") programs replaced the sick-time and vacation policies. The PTO program affords employees between twenty-five and thirty-five days annually for sick and vacation time. Only five unused days can be carried over to the succeeding year, and must be used by March 15 of such year. PTO days taken are paid at full salary; unused days are payable at termination.
 
 
 5
 The STD program complements the PTO program by allowing for extended absences due to employee illness and allows employees to take up to twenty-one weeks per year. Unused days do not carry over to succeeding years. STD days are paid at either sixty-five percent or full pay, depending upon seniority. However, the first five days of STD leave are unpaid. STD days may not be used to care for a family illness, but employees may take up to twelve weeks of unpaid leave for that purpose. With the adoption of the PTO and STD programs, employees lost their stock of unused sick days. Unused vacation days were converted to PTO days.
 
 
 6
 Karla Funkhouser and Suzanne Pearce (the "employees") filed a class action complaint on behalf of Wells Fargo's employees. The employees claim that Wells Fargo's change in policy violates the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a), and constitutes a breach of contract under state law.
 
 
 7
 Wells Fargo moved to dismiss the employees' claims under Federal Rule of Civil Procedure 12(b)(6). Among other things, Wells Fargo claimed that the employees' state breach of contract claim was preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1144(a).
 
 
 8
 The district court dismissed the employees' FMLA claim for failure to state a claim. The court then determined that the state law breach of contract claim was not preempted by ERISA. The court declined to exercise supplemental jurisdiction over the breach of contract claim, dismissing it without prejudice. The employees and Wells Fargo each noted a timely appeal.
 
 II
 
 9
 The FMLA requires employers to provide at least twelve weeks of unpaid leave to employees for (1) the treatment of a serious, disabling health condition suffered by the employee, (2) the birth of a child, or (3) the care of a child, spouse, or parent who suffers from a serious health condition. 29 U.S.C. § 2612(a), (c); see also Scamihorn v. Gen. Truck Drivers, 282 F.3d 1078, 1082-83 (9th Cir.2002).
 
 
 10
 The employees claim that Wells Fargo violated the FMLA by switching to the PTO and STD programs. In particular, the employees contend that Wells Fargo violated the statute by wiping out their stock of unused sick days. Significantly, the employees do not claim that Wells Fargo's current programs run afoul of the FMLA's twelve-week leave requirement. Indeed, Wells Fargo's programs exceed the statute's requirements. Instead, the employees contend only that Wells Fargo's switch to a less favorable benefits package violates the statute.
 
 
 11
 So stated, the employees have not made out a claim under the FMLA. An employer complies with the FMLA so long as it meets or exceeds the statute's minimum requirements. See 29 C.F.R. § 825.700(b);[2] see also Covey v. Methodist Hosp., 56 F.Supp.2d 965, 971-72 (W.D.Tenn.1999); Hite v. Biomet, Inc., 53 F.Supp.2d 1013, 1019 n. 5 (N.D.Ind.1999); Rich v. Delta Air Lines, Inc., 921 F.Supp. 767, 773 (N.D.Ga.1996). An employer may freely change its program, even if the change results in a reduction in benefits. See 29 C.F.R. § 825.700(b) ("Nothing in this Act prevents an employer from amending existing leave and employee benefit programs, provided they comply with FMLA.").
 
 
 12
 The employees rely solely upon § 2612(d)(2)(B), which provides that an "employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee... for any part of the 12 week period...." However, that section merely clarifies that employers may require, and employees may elect, to use their accrued sick and vacation time as part of the twelve-week leave period. See Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1127 (9th Cir.2001). Section 2612(d)(2)(B) does not create an entitlement to accrued sick time.
 
 
 13
 In short, the FMLA does not require Wells Fargo to "lock-in" a particular benefits package. The district court properly dismissed the employees' FMLA claim because Wells Fargo's current programs exceed the FMLA's minimum leave requirements.
 
 III
 
 14
 Wells Fargo contends that the district court was without jurisdiction to rule on the ERISA preemption issue because it ultimately declined to exercise supplemental jurisdiction over the state law breach of contract claim. See Axess Int'l, Ltd. v. Intercargo Ins. Co., 183 F.3d 935, 943-44 (9th Cir.1999). If a district court chooses not to exercise supplemental jurisdiction, it lacks the power to adjudicate the merits of the claim, including the affirmative defense of conflict preemption. See id.
 
 
 15
 However, the district court had jurisdiction to consider whether the claim was completely preempted by ERISA. See id. at 943 n. 7. If a claim is completely preempted by ERISA, then the claim arises under federal law within the meaning of 28 U.S.C. § 1331. See, e.g., Toumajian v. Frailey, 135 F.3d 648, 655 (9th Cir.1998). The district court was obligated to consider complete preemption to determine whether a federal question existed. If the state claim were completely preempted, the district court would have had federal question jurisdiction over the claim and would not have had discretion to dismiss the claim instead without prejudice. See, e.g., New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 359, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) ("[T]he federal courts' obligation to adjudicate claims within their jurisdiction [is] virtually unflagging." (internal quotation marks omitted)). On the other hand, if the claim were not completely preempted, the court would be free to dismiss without prejudice under the supplemental jurisdiction statute. See 28 U.S.C. § 1367(c); see also Acri v. Varian Assocs., 114 F.3d 999, 1000 (9th Cir.1997) (en banc). The district court consequently had jurisdiction to consider complete preemption.
 
 
 16
 Wells Fargo notes, however, that the district court couched its analysis in terms of conflict, not complete, preemption. Under ERISA, a claim is completely preempted if it falls within the scope of the statute's civil enforcement provisions and it is preempted under conflict preemption principles. See, e.g., Abraham v. Norcal Waste Systems, Inc., 265 F.3d 811, 819 (9th Cir.2001). In other words, a determination of ERISA complete preemption necessarily implicates consideration of conflict preemption. We are satisfied that the district court did not exceed its jurisdiction.
 
 IV
 
 17
 Wells Fargo further argues that even if the district court had jurisdiction, it otherwise erred in determining that the breach of contract claim is not preempted under conflict preemption principles. ERISA preempts "all State laws insofar as they may now or hereafter relate to any [covered] employee benefit plan." 29 U.S.C. § 1144(a).
 
 
 18
 Wells Fargo first contends that its pre-merger sick-time and vacation policies constitute an "employee benefit plan" within the meaning of the Act. If this contention were correct, the employees' breach of contract claim would be preempted because their claim clearly "relates to" the pre-merger policies. Wells Fargo also contends that the employees' claim "relates to" the STD program. If this contention were correct, the employees' claim would indeed be preempted because the STD program concededly constitutes an ERISA employee benefit plan. We take up Wells Fargo's contentions in turn.
 
 
 19
 * Wells Fargo first contends that the pre-merger policies constitute ERISA employee benefit plans. ERISA preempts state laws relating to "employee benefit plans," not simply "employee benefits." Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 7, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). ERISA defines an "employee benefit plan" as including "any plan ... or program ... maintained by an employer... for the purpose of providing ... medical... benefits, or benefits in the event of sickness, ... or vacation benefits...." 29 U.S.C. § 1002(1) (defining "employee welfare benefit plan"); see also id. § 1002(3) (defining "employee benefit plan as including "employee welfare benefit plans"); 29 C.F.R. § 2510.3-1(a) (clarifying definitions of "employee welfare benefit plans" and "employee benefit plans").
 
 
 20
 The Department of Labor's regulations state that "employee benefit plans" do not include "payroll practices." 29 C.F.R. § 2510.3-1(b). The regulations define "payroll practices" to include "[p]ayment of an employees's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons...." Id. § 2510-3-1(b)(2). In Alaska Airlines, Inc. v. Or. Bureau of Labor, 122 F.3d 812, 813-14 (9th Cir.1997), we held that the employer's sick-time policy was a payroll practice because sick days were paid at full salary, payments were made in the employee's normal paycheck, and the policy was funded by the employer's general assets. See also Massachusetts v. Morash, 490 U.S. 107, 115, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989) (holding that a vacation policy with similar features constituted a payroll practice).
 
 
 21
 Wells Fargo's pre-merger sick and vacation policies easily fall within the definition of a payroll practice. As with the policy in Alaska Airlines, sick and vacation days were compensated at full pay, payments were made in the employees' normal paychecks, and the policies were funded by Wells Fargo's general assets.
 
 
 22
 Wells Fargo's arguments to the contrary are unpersuasive. Wells Fargo suggests that the pre-merger sick-time policy is not a payroll practice because payments were derived from a "complicated calculus." Under the pre-merger sick-time policy, employees earned sick days subject to various conditions. For example, part-time employees accrued sick days at a reduced rate, and employees did not accrue sick days while on leave. However, these conditions do not make the pre-merger policy a non-payroll practice. Despite the conditions, sick payments were "fixed, due at known times, and ... not depend[ant] on contingencies outside the employee's control." Morash, 490 U.S. at 115, 109 S.Ct. 1668.
 
 
 23
 Alternatively, Wells Fargo asserts that the employees characterized the pre-merger sick-time policy as a non-payroll practice in opposing the motion to dismiss. While the employees referred to the pre-merger sick-time policy as "insurance protection," they made this reference simply to analogize to the amount of damages available. Specifically, the employees contended that their damages should be the cost of purchasing a health insurance policy. There is nothing in the record to indicate that the employees ever referred to the pre-merger plan as an ERISA employee benefit plan.
 
 
 24
 Finally, Wells Fargo's reliance upon McMahon v. Digital Equipment Corp., 162 F.3d 28 (1st Cir.1998) is misplaced. Unlike the policy in McMahon, the pre-merger policy was funded entirely by Wells Fargo's general assets and Wells Fargo never represented to the Department of Labor that the policy was an ERISA plan. Id. at 38.
 
 
 25
 In sum, Wells Fargo's pre-merger sick-time and vacation policies are a payroll practice exempt from the definition of an "employee benefit plan." Therefore, it is irrelevant that Wells Fargo's breach of contract claim "relates to" the pre-merger policies. See 29 U.S.C. § 1144(a).
 
 B
 
 26
 Wells Fargo also contends that the employees' breach of contract claim is preempted because the claim "relates to" the STD program, which is concededly an ERISA benefit plan. A claim "relates to" an employee benefit plan if it has a "connection with or reference to" the plan. Associated Gen. Contractors v. Smith, 74 F.3d 926, 929-30 (9th Cir.1996); see also Abraham, 265 F.3d at 819-20 (discussing the relatively broad scope of "relates to").
 
 
 27
 Wells Fargo argues that the employees' breach of contract claim is preempted because a court would have to refer to the STD program in calculating damages. If the employees' prevailed on their breach of contract claim, they likely would not receive the full value of the pre-merger policies as damages. Rather, Wells Fargo likely would be entitled to an offset for the value of the STD and PTO programs. Accordingly, a court would refer to the STD program, an ERISA employee benefit plan, in calculating damages.
 
 
 28
 However, a claim does not "relate to" an ERISA employee benefit plan simply because a court would refer to the plan in calculating damages. See Martori Bros. Distrib. v. James Massengale, 781 F.2d 1349, 1358-59, modified, 791 F.2d 799 (9th Cir.1986), overruled on other grounds, Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc., 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); see also Forbus v. Sears Roebuck & Co., 30 F.3d 1402, 1406-07 (11th Cir.1994) ("[T]he mere fact that the plaintiffs' damages may be affected by a calculation of [ERISA] pension benefits is not sufficient to warrant preemption."); Hospice of Metro Denver, Inc. v. Group Health Ins. of Okla., Inc., 944 F.2d 752, 755 (10th Cir.1991) (same); Pizlo v. Bethlehem Steel Corp., 884 F.2d 116, 120 121 (4th Cir.1989) (same). It would lead to "absurd results" if ERISA preempted claims simply because employee benefit plans were relevant to calculating damages. Martori Bros. Distrib., 781 F.2d at 1359. Notably, ERISA would preempt most garden-variety wrongful termination suits because the value of employee benefits would be relevant in calculating damages. See, e.g., id. Congress did not intend that ERISA preemption have such a radical scope.[3]
 
 
 29
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The panel unanimously finds this case suitable for decision without oral argumentSee Fed. R.App. P. 34(a).
 
 
 [2]
 The Supreme Court's recent disapproval of § 825.700(a), which concerns employer notice, does not affect subsection (b)See Ragsdale v. Wolverine World Wide, Inc., ___ U.S. ___, ___, 122 S.Ct. 1155, 1165, 152 L.Ed.2d 167 (2002).
 
 
 [3]
 In light of our holding, we of course express no view as to the merits of the employees' breach of contract claim